150 N.J. Super. 585 (1977)
376 A.2d 228
RENE J. SHAW, EXECUTOR OF THE ESTATE OF EILEEN SHAW, DECEASED, PLAINTIFF,
v.
RIVERDELL HOSPITAL, A CORPORATION OF THE STATE OF NEW JERSEY, EDWIN FRIEMAN, D.O., ALLAN LANS, D.O., JAY SKLAR, D.O., IRWIN LEE RHINE, D.O. AND MARVIN WISCH, D.O., INDIVIDUALLY AND AS OFFICERS AND DIRECTORS OF RIVERDELL HOSPITAL, JOHN DOE, JOHN ROE, AND JOHN HOE, SAID NAMES BEING FICTITIOUS, INDIVIDUALLY AND AS MEMBERS OR FORMER MEMBERS OF THE MORTALITY REVIEW AND/OR TISSUE REVIEW COMMITTEE OF RIVERDELL HOSPITAL, AND ELLIOTT WEINER, INDIVIDUALLY AND AS ADMINISTRATOR OF RIVERDELL HOSPITAL, DEFENDANTS. F. RONALD BIGGS, SUBSTITUTED ADMINISTRATOR C.T.A. OF THE LAST WILL AND TESTAMENT OF FRANK S. BIGGS, DECEASED, PLAINTIFF,
v.
MARIO E. JASCALEVICH AND RIVERDELL HOSPITAL, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided May 19, 1977.
*586 Mr. Joseph Clark for plaintiff Rene J. Shaw (Messrs. Liebowitz, Kraft & Liebowitz, attorneys).
Mr. Edward E. Kuebler for defendant Riverdell Hospital.
Mr. Donald E. Morrice for plaintiff F. Ronald Biggs (Messrs. Jardine & Morrice, attorneys).
*587 Mr. Norman S. Karpf for defendant Mario Jascalevich (Messrs. Morgan, Melhuish, Monaghan & Spielvogel, attorneys).
TRAUTWEIN, A.J.S.C.
These matters were opened to the court by notices of motion by defendants who seek to have the captioned cases placed on the inactive list pending the outcome of a related criminal matter. Although the motions were separately filed, they involve similar factual backgrounds and common legal issues and will be disposed of in one consolidated opinion.
On May 18, 1976 Dr. Mario Jascalevich was charged in a five-count indictment with violations of N.J.S.A. 2A:113-1 and N.J.S.A. 2A:113-2. Pertinent to the Biggs v. Jascalevich motion is count Four of Indictment S-495-76, which charges defendant Jascalevich with the murder of plaintiff's decedent Frank S. Biggs. Equally pertinent with regard to Shaw v. Riverdell Hospital is that, although it has been averred that Eileen Shaw died under mysterious circumstances, to date none of the defendants in either of these two cases has been indicted in connection with her death. Serious constitutional issues were raised in the course of the prosecution of the criminal indictments and the New Jersey Supreme Court has stayed the trial pending the outcome of a related criminal appeal.
On July 12, 1976 plaintiff Shaw instituted her suit, captioned Shaw v. Riverdell Hospital, which, in part, alleges that defendant Riverdell Hospital and others were negligent and reckless in care and treatment of decedent. Although Dr. Jascalevich is not a party defendant in that case, the parties have agreed to postpone actual trial of the case until Dr. Jascalevich's criminal matter is tried. However, plaintiff wants discovery to proceed in all respects, while defendant seeks to have the entire matter stayed pending the final disposition of the criminal case. Subsequently, on October 28, 1976, plaintiff Biggs instituted his action entitled Biggs v. Jascalevich. In it he alleges *588 that Dr. Jascalevich either intentionally or negligently administered to plaintiff's decedent the drug tubocurarite, thereby causing his death. Plaintiff further alleges that Riverdell Hospital is vicariously liable for the acts of its agent, and independently negligent in its failure to supervise and monitor the conduct of Dr. Jascalevich. Defendants in this action seek to have the entire case, including discovery, stayed pending the outcome of Dr. Jascalevich's criminal trial, while plaintiff seeks to have the entire matter proceed in the normal course.

I
It is a well established and highly cherished principle of Anglo-Saxon law that a citizen has a right to be free from compulsory self-incrimination. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); Fries v. Brugler, 12 N.J.L. 79 (Sup. Ct. 1830); In re Vince, 2 N.J. 443 (1949). And although this right, like other constitutional rights, is not absolute, it is clear that a state may not exact too high a price for its exercise. Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967); Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967); Gardner v. Broderick, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968).
Defendant Dr. Jascalevich (hereinafter "defendant") argues that if the civil action of Biggs v. Jascalevich were to proceed prior to a final disposition of the criminal case, an unconstitutional burden would be placed upon the exercise of his right to be free from compulsory self-incrimination. U.S. Const., Amend. V; N.J.S.A. 2A:84A-19. This argument is based upon the supposition that when the plaintiff begins civil discovery he most likely will demand, through interrogatories and depositions, answers which could subsequently incriminate defendant in his criminal trial. It may be assumed that defendant will refuse to answer such potentially incriminating questions and thereby *589 trigger a request on behalf of plaintiff for civil sanctions. Mahne v. Mahne, 66 N.J. 53 (1974); Costanza v. Costanza, 66 N.J. 63 (1974); Duffy v. Currier, 291 F. Supp. 810 (D. Minn. 1968); Insurance Co. of North America v. Steigler, 300 A.2d 16 (Del. Super. 1972) aff'd 306 A.2d 742 (Del. Sup. 1973). Anticipating such a turn of events, defendant contends that the court, through the simple expedient of a stay, should foreclose the contingency of civil sanctions which, he alleges, would result in unconstitutional penalties and, at the same time, relieve him of the difficult decision of choosing between sanction or self-incrimination. Such an analysis, however, puts the rabbit into the hat. For the issue which must be resolved is whether permitting Biggs v. Jascalevich to proceed in tandem with the criminal action would in fact unconstitutionally penalize defendant if he chose to assert his right against self-incrimination.
Initially, it must be observed that neither the Biggs nor the Shaw case has yet progressed to the point where defendant is required to decide whether to invoke his privilege. Moreover, even if defendant were, in the future, to invoke the privilege in connection with the Biggs litigation, the issue of an unconstitutional penalty would still not arise unless and until the court decided to impose a sanction. See Mahne v. Mahne and Costanza v. Costanza, supra. Clearly, then, the motion to stay the trial of the Biggs case and the motion to stay discovery in the Shaw case were prematurely filed.
The court, however, will not base its decision to deny these motions solely on the ground of prematurity, for it is of the opinion that the privilege against self-incrimination is not infringed, nor is too high a price exacted for the exercise of that privilege when a criminal defendant is put to the difficult choice of whether or not to assert the privilege in a related civil case. See U.S. v. Kordel, 397 U.S. 1, 90 S.Ct. 763, 25 L. Ed 2d 1 (1970); Insurance Co. of North America v. Steigler, supra; DeVita *590 v. Sills, 422 F.2d 1172 (3 Cir.1970); National Freight v. Ostroff, 133 N.J. Super. 554 (Law Div. 1975); State v. Amato, 42 Del. Ch. 387, 213 A.2d 53 (Del. Ch. 1965).
Defendant's reliance upon Garrity v. New Jersey, and Spevack v. Klein, supra, is misplaced. In those cases the sanctions exacted against defendants were in the nature of penalties and served no purpose other than a naked attempt to discourage those defendants from exercising their constitutional rights. As discussed more fully in Point II below, this court's reason for refusing to stay the Biggs trial and for refusing to stay discovery in the Shaw case is not to intentionally curtail the exercise of Dr. Jascalevich's right against compulsory self-incrimination (in fact, Dr. Jascalevich is not even a defendant in the Shaw case), but is rather to insure that substantial justice is effected and that plaintiffs are given their day in court without further inordinate delay. "Here the only consequence flowing from an assertion of the privilege is that the available evidence will be weighed by the trier of fact and a verdict returned based thereon * * *" Steigler, supra, at 18.
Similarly without merit is defendant's contention that his refusal to answer potentially incriminating questions may jeopardize his insurance coverage, causing him to suffer the alleged unconstitutional penalty of having to finance his own defense. If, by express or implied consent, defendant has agreed to cooperate with his insurance carrier and subsequently decides to withhold such cooperation, thereby causing the carrier to elect to disclaim coverage, he is hoist with his own petard. Notwithstanding that this court's refusal to stay the Biggs suit may bring some pressure to bear either for or against invoking the privilege, the court's decision emanates from an attempt to effect substantial justice among all the litigants. Hence, any pressure brought to bear as a result thereof will be sufficiently attenuated so as not to be an unconstitutional penalty in that it serves a purpose other than simply to discourage the defendant from exercising his constitutional right. See DeVita v. Sills, *591 supra; and cf. Garrity v. New Jersey, Spevack v. Klein, supra.
Regardless of any inconvenience defendant may face in these civil proceedings, it must be remembered that "the law is not compelling the parties to do anything but disclose the truth. To quote Mr. Justice Burling, `the truth is always the truth, and telling the truth will not hurt anyone except insofar as he ought to be hurt' * * *." National Freight v. Ostroff, supra 133 N.J. Super. at 559.
The court agrees with Judge Gibbons' reasoning in DeVita v. Sills, supra. In that case a defendant sought to stay a state judicial inquiry looking toward disbarment and removal from judicial office pending the completion of a related criminal proceeding on the ground that the Fifth Amendment should be construed so that one is not faced with the difficult decision of either asserting the privilege against self-incrimination or testifying with limited immunity.[1] Rejecting this argument, Judge Gibbons stated that "No authority has come to our attention for so broad a reading of the Fifth Amendment, and the countervailing possibilities of prejudice to civil litigants militates against any such extension of constitutional doctrine." DeVita, supra at 1178. So, too, in the Biggs litigation, where defendant may or may not avail himself of his privilege against self-incrimination and where he may seek the shelter of a protective order under R. 4:10-3, the court is of the opinion that there exists no absolute constitutional right that this civil action must be suspended to await the outcome of the related criminal case.

II
Having decided that defendant has no constitutional right to have the Biggs matter stayed, it next remains to be decided *592 whether the court should nonetheless exercise its equitable discretion and stay discovery proceedings and trial in Biggs or stay discovery in Shaw.
Dr. Jascalevich argues that as a practical matter it will be impossible for him to defend on two fronts (criminal and civil) and at the same time resolve serious questions of insurance coverage. Also, he maintains that plaintiff will have the undue advantage of meeting an opponent in the civil litigation who will be unable to concentrate fully on his defense.
While there is no question that the court possesses the power to stay this matter (see Landis v. North America Co., 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936); Texaco, Inc. v. Borda, 383 F.2d 607 (3 Cir.1967), and cf. Insurance Co. of North America v. Steigler, supra), a balancing of the equities, in the court's opinion, does not justify such an order. The incidents which gave rise to these lawsuits occurred nearly ten years ago and, as noted above, the criminal trial has previously been stayed by order of our Supreme Court. In the Biggs case, plaintiff's decedent is survived by his widow, a person of advanced age living in a nursing home, and by plaintiff, who was dependent upon his father (decedent) at the time of his death. Therefore, any further delay of this proceeding may, as a practical matter, deny to decedent's widow her possibility of ever recovering. Moreover, Dr. Halpern and at least one other key witness have already died, memories of other witnesses are doubtlessly fading, and possible loss or destruction of documentary evidence may well prevent or impair a proper presentation of this case.
In connection with the Shaw litigation, defendant Riverdell Hospital argues that it cannot, at this time, obtain information necessary to prepare its case. But, since the parties have agreed to stay the civil trial pending the outcome of Dr. Jascalevich's criminal trial, the only issue to be resolved is whether discovery should proceed. This court can find absolutely no justification for ordering a stay of discovery. *593 On the contrary, it appears that to permit discovery to proceed to the fullest extent possible will serve not only to further the search for truth, but also to enable both plaintiff and defendant to obtain at least some of the information necessary to prepare their cases.
To accede to the demands of defendants at this stage of the proceedings would serve to frustrate, rather than to promote, the ends of justice. As hereinabove noted, the criminal trial has previously been stayed; the civil cases have not yet proceeded to the point where defendant must decide whether to assert the privilege against self-incrimination; no sanctions whatsoever have been brought to bear against defendant, and if necessary defendant may petition the court for a protective order. R. 4:10-3. While it is true that potential problems exist with respect to insurance coverage, the court is prepared to resolve those problems, if and when they arise, in a manner least prejudicial to defendant. See Burd v. Sussex Mut. Ins. Co., 56 N.J. 383 (1970).
To say that the civil suit[s] must remain in statu quo indefinitely, is to import to the courts an impotency unworthy of them. To compel other parties to sit supinely by while their rights or possibility of recovery are eroded is to invite contempt for the law as well as to permit any guilty party to secret or dissipate the fruits of his wrongdoing. [National Freight v. Ostroff, supra at 559]
NOTES
[1] In DeVita, the court made clear that a grant of immunity and the scope thereof is relevant only if coupled with a compulsion to testify. Given the absence of such compulsion in this matter, the reasoning in DeVita appears applicable.