282 N.J. Super. 494 (1995)
660 A.2d 1199
A.B.C., PLAINTIFF-APPELLANT,
v.
XYZ CORPORATION AND XYZ COMPANY, INTERNATIONAL, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 1, 1995.
Decided June 15, 1995.
*496 Before Judges PETRELLA, HAVEY and CUFF.
Robert F. Hermann argued the cause for appellant (Hermann & Bateman, attorneys; Mr. Hermann, on the brief).
Patrick J. Conlon argued the cause for respondents (Patrick J. Conlon and Joseph T. Walsh III, attorneys; Mr. Conlon, of counsel and on the brief).
PER CURIAM.
The plaintiff in this appeal seeks permission to prosecute an employment discrimination claim against his former corporate employer using pseudonyms so that he may litigate his claim anonymously, without disclosing his or his former employer's name. Plaintiff argues that he suffers from a sexual "disorder" known as exhibitionism, that this disorder is a "handicap" under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -42 (LAD), and that he will be stigmatized if he is not permitted to proceed anonymously on his claim. The Law Division judge found that society's interest in open judicial proceedings outweighed any privacy interest plaintiff had in proceeding anonymously, and granted defendant's motion to dismiss. We agree with the Law Division judge that the right of the public, as well as that of defendants, to know the identity of the parties in public court *497 proceedings in a civil case for money damages outweighs any claim of this plaintiff to anonymity. The trial judge indicated that the definition of "handicapped" in the LAD "appears broad enough to include mental illness of the psychosexual variety." We have serious doubts about this but need not resolve it because the trial judge dismissed on procedural grounds.
Plaintiff, a married male, with two daughters, began working for the defendants, described as "a diversified, multi-national corporation," in 1974. Apparently, up until the incident which gave rise to plaintiff's discharge, he maintained an unblemished work record, was promoted within the company and received various bonuses and stock options. He "progressed through the ranks" to manager, and then manager, Resources and Planning Division, Human Resources Department, in 1990.
Plaintiff was required to attend a company-paid business seminar on November 18, 1992, in Dallas, Texas during regular business hours. He did not attend the seminar, but instead jogged to a nearby office complex and made sexual remarks and exposed himself through his skin-tight shorts to a group of women in an elevator. He was arrested for indecent exposure. The Irving, Texas Police Department informed plaintiff's employer of his arrest. The employer investigated, and based on plaintiff's failure to attend the seminar, his misrepresentations to the company, and his conduct on November 18, 1992, he was fired. When the complainant in the Dallas, Texas incident did not press charges the criminal complaint was dismissed. Plaintiff does not dispute any of these facts and concedes his act of exhibitionism.[1]
Plaintiff asserts that there was no nexus between this conduct and his employment with defendants and that his conduct was a *498 "manifestation of a paraphilia[2] psychosexual disorder (i.e., exhibitionism) and/or an anxiety disorder which he was then suffering from," and this disorder is a handicap under the LAD. Plaintiff argues that the judge failed to apply a balancing test to his claimed right to anonymity. He complains that the judge improperly focused on the nature of his disability. Plaintiff also alleged that his discharge was due to race discrimination and that African-Americans were under-represented in defendants' work force. The race discrimination aspect of plaintiff's complaint was not the basis for his claim that he should be allowed to maintain his suit with anonymity of all parties.
After the Law Division judge granted defendant's motion to dismiss due to the anonymous naming of parties, plaintiff moved for reconsideration and submitted affidavits of two psychiatrists, Dr. Harish Malhotra who treated him in New Jersey in February and March 1993, and Dr. Jerry Lithman of North Carolina who has treated him since May 19, 1993, when plaintiff obtained employment and moved there. Malhotra related an incident in the summer of 1992 in Willowbrook Mall [in Wayne, New Jersey] in which plaintiff exposed himself, but again the victim did not want to press charges. Security threatened to have plaintiff arrested if he ever returned to the mall. Plaintiff apparently had admitted to this psychiatrist that there were "other times when he was close to being arrested," and also to jogging in parks where he would wear similar skin-tight clothes and display his genitals to women.
Malhotra diagnosed plaintiff as severely depressed over the loss of his job, and being an exhibitionist, which he stated was a disorder amenable to treatment. He characterized the November *499 18, 1992 incident as "a symptom and manifestation" of plaintiff's exhibitionism, and opined that an exhibitionist can be treated and can be a productive employee who would not create any danger in the work place. Lithman opined that because of the attitude of intolerance toward exhibitionists it would be important to conduct plaintiff's civil complaint for monetary and other relief in confidence. However, even after plaintiff responded with his psychiatrists' affidavits setting forth his diagnosis of "Mr. A.B.C.," the judge expressed concern that plaintiff's criminal conduct was injurious or potentially injurious to innocent victims. Plaintiff again responded with a note from his treating doctor to the effect that Mr. A.B.C.'s condition was under control, but the judge was still not persuaded that plaintiff's "privacy interests outweigh the public's right to an open forum."
Court proceedings are public proceedings and the names of the parties and their addresses are essential not only to identify the various parties, but also in connection with aspects of the judicial process such as discovery, motion practice, jury selection, and execution to enforce money judgments. As a corollary, proper identification of a party assures against misidentification of some other party as being involved. There is a constitutional and customary presumption of openness in all judicial proceedings, except in juvenile court proceedings. See Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 580, 100 S.Ct. 2814, 65 L.Ed.2d 973, 992 n. 17 (1980) ("historically both civil and criminal trials have been presumptively open"); see also R. 5:19-2 (confidentiality in juvenile proceedings). As stated in Craig v. Harney, 331 U.S. 367, 374, 67 S.Ct. 1249, 1254, 91 L.Ed. 1546, 1551 (1947):
A trial is a public event. What transpires in a courtroom is public property.... There is no special perquisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire in proceedings before it.
See also Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 492-493, 95 S.Ct. 1029, 1045, 43 L.Ed.2d 328, 348 (1975) (freedom of press protected television station's broadcast of rape victim's name *500 where information was contained in public court records and was not obtained in improper fashion).
The caption of a civil complaint normally identifies all the parties to the lawsuit. R. 1:4-1(a)(1). That rule also requires that "the first pleading of any party shall state the party's residence address." This rule is not merely one of administrative convenience. It also serves society's interest in having access to the facts of the lawsuit, among which are the actual names of the precise parties involved. Further, R. 1:2-1 provides that all proceedings "shall be conducted in open court unless otherwise provided by rule or statute," and proscribes the sealing of court records except "for good cause shown." Cf. F.A., P.A., and M.N., M.A. & C.A., infants by their guardian ad litem, P.A. v. W.J.F., Jr. & S.F., 280 N.J. Super. 570, 656 A.2d 43 (App.Div. 1995) (initials of parents, children, and complainants in civil suit stemming from child abuse complaint, were utilized due to confidentiality requirement in N.J.S.A. 9:6-8.10a). Thus, our Supreme Court has permitted press access to a preliminary hearing in an emergency removal of a child, noting the constitutional presumption of open access to criminal and civil proceedings. New Jersey Division of Youth and Family Services v. J.B., 120 N.J. 112, 124, 576 A.2d 261 (1990).
Likewise, our Supreme Court has disapproved of the use of initials in a divorce "to throw the protective cloak of anonymity over a successful and well-known member of the bar." Stern v. Stern, 66 N.J. 340, 343 n. 1, 331 A.2d 257 (1975). The Court, however, acknowledged that disguising the identity of litigants "serves a legitimate end where the interests of minor children are concerned, as well as upon other miscellaneous but rare occasions." Ibid.
Indeed, the Court did not consider the protection of a sexual harassment plaintiff such a rare occasion when it revealed plaintiff's name in Lehmann v. Toys `R' Us, Inc., 132 N.J. 587, 626 A.2d 445 (1993), after the opinion of a panel of this court had, without comment, for the first time in the litigation, initialized it in the *501 caption. Hence, there is no reason in logic or law that a perpetrator should be protected, when a victim is not. Even if we limit our consideration to civil tort cases, whether or not emotional distress claims are involved, many personal and private matters of necessity become part of the public record because the parties choose to litigate in the public forum which the court provides. The same is true in the usual Family Part case.
We recognize, as did the Law Division judge, that various federal cases have considered the issue of protection of a party's identity and have utilized a balancing test. In Doe v. Stegall, 653 F.2d 180 (5th Cir.1981), for example, a mother and her children were permitted to use fictitious names to challenge the constitutionality of prayer and bible reading in Mississippi public schools. Id. at 181. The stated factors that convinced that court to allow anonymity, despite the "customary and constitutionally-embedded presumption of openness in judicial proceedings," were plaintiffs' realistic fear of harassment and violence, and the status of the children who were parties. Id. at 186. The court stated:
We advance no hard and fast formula for ascertaining whether a party may sue anonymously. The decision requires a balancing of considerations calling for maintenance of a party's privacy against the customary and constitutionally-embedded presumption of openness in judicial proceedings. [Ibid.]
Southern Methodist University Association of Women Law Students v. Wynne & Jaffe, 599 F.2d 707 (5th Cir.1979) involved women law students who alleged that the defendant law firm discriminated in hiring on the basis of sex. The Fifth Circuit observed that in cases in which plaintiffs were allowed under the federal balancing test to use fictitious names they
divulged personal information of the utmost intimacy; many also had to admit that they either had violated state laws or government regulations or wish to engage in prohibited conduct.... Furthermore, all of the plaintiffs previously allowed in other cases to proceed anonymously were challenging the constitutional, statutory or regulatory validity of government activity. [Id. at 713 (footnote omitted).]
The court concluded that because plaintiffs had publicly accused the defendants of "serious violations of federal law," under principles of basic fairness the accusers should reveal their names. Ibid.
*502 In Doe v. Frank, 951 F.2d 320 (11th Cir.1992), plaintiff alleged discrimination on the basis of a claimed handicap, i.e., alcoholism, and sought to conceal his identity. The court considered the community disapproval which plaintiff might face if his name were divulged, but concluded that "the stigma involved in Doe's disclosure does not rise to the level necessary to overcome the presumption of openness in judicial proceedings," particularly because:
Lawsuits are public events. A plaintiff should be permitted to proceed anonymously only in those exceptional cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of a plaintiff's identity. The risk that a plaintiff may suffer some embarrassment is not enough. [Id. at 324.]
Here, plaintiff accuses defendants of serious violations of state law. However, plaintiff has not shown any real danger of physical harm, and the claimed injury litigated against is alleged wrongful termination and discrimination, not privacy. Cf. Coe v. United States District Court, 676 F.2d 411 (10th Cir.1982) (doctor accused of professional misconduct involving sexual improprieties not permitted to proceed under fictitious name in light of public's legitimate interest in disclosure).
Plaintiff's reliance on cases involving patients' rights to privacy in actions involving their health care providers is misplaced. For instance, in Whalen v. Roe, 429 U.S. 589, 591, 97 S.Ct. 869, 872, 51 L.Ed.2d 64, 68 (1977), a state statute was upheld that required a centralized computer file record of names and addresses of people who had obtained certain prescription drugs for which there was also an unlawful market. Cf. Doe v. City of New York, 15 F.3d 264 (2nd Cir.1994) (agency publicly disclosed the settlement terms of HIV infected plaintiff's discrimination claim in accordance with New York City law despite a confidentiality clause in the settlement agreement; court determined that under the agreement plaintiff had a right to confidentiality in his HIV status, and it did not "automatically become a public record when he filed his claim with the Commission and entered into the Conciliation Agreement"); James v. Jacobson, 6 F.3d 233, 234-235 (4th Cir.1993) (plaintiffs allowed to proceed anonymously where they alleged that *503 their infertility doctor artificially inseminated plaintiff-wife with his own sperm rather than plaintiff-husband's sperm); Doe v. Blue Cross & Blue Shield of Rhode Island, 794 F. Supp. 72 (D.R.I. 1992) (transsexual allowed to proceed anonymously against medical insurer in claim for reimbursement of sex change expenses); United States v. Westinghouse Electric Corp., 638 F.2d 570, 581-582 (3rd Cir.1980) (National Institute for Occupational Safety and Health permitted to obtain employee medical records so long as employees had prior notice and an opportunity to object).
The issue here is plaintiff's right to proceed anonymously, which was not directly implicated in Doe v. City of New York, supra, 15 F.3d 264, because there was a violation of a confidentiality agreement. Nor is plaintiff's potential embarrassment due to disclosure caused by his status as an innocent victim, as was the case in James v. Jacobson, supra, 6 F.3d 233.
Plaintiff's arguments that he would risk self-incrimination, that he and his family might be isolated from society and that his employment would be in jeopardy are not only somewhat speculative, but any such ramifications are due to his actions and his election to institute litigation over a perceived wrong. Plaintiff has admitted a criminal act in Texas, and has admitted through his doctors' affidavits that he has engaged in conduct prohibited under New Jersey's Criminal Code. Common sense dictates that the disclosure of the identity of this plaintiff is not protected by any statute or rule of court and would be no more detrimental than disclosure of the identity of the doctor accused of sexual impropriety in Coe v. United States District Court, supra, 676 F.2d 411, or of the alcoholic plaintiff in Doe v. Frank, supra, 951 F.2d 320. Cf. Clowes v. Terminix International, Inc., 109 N.J. 575, 538 A.2d 794 (1988) (plaintiff who successfully argued that alcoholism is a "handicap" under the LAD proceeded under his true name).
While we recognize that disclosure of intimate personal information or the potential that a litigant might be forced to admit engaging in or the desire to engage in prohibited conduct are considerations with respect to obtaining protective orders, *504 many tort claims and personal injury claims involve personal and intimate information. Such factors as embarrassment or economic harm would not justify the anonymity of parties, particularly parties seeking to recover money damages. We know of no case in which a money judgment has been entered against an anonymous corporation. As Judge Trautwein noted in Shaw v. Riverdell Hospital, 150 N.J. Super. 585, 376 A.2d 228 (Law Div. 1977): "Regardless of any inconvenience ... it must be remembered that `the law is not compelling the parties to do anything but disclose the truth.'" Id. at 591, 376 A.2d 228 (quoting National Freight, Inc. v. Ostroff, 133 N.J. Super. 554, 559, 337 A.2d 647 (Law Div. 1975)).
Moreover, allowing a plaintiff in a case such as this, where a jury is demanded, to proceed anonymously against a defendant that he also wants to remain anonymous, not only is contrary to our public policy of open judicial forums and public disclosure, but would create serious problems of fairness to the defendant in a jury trial, as well as in such preliminary matters as the process of selection of a fair and impartial jury. Defendant might well be prejudiced in defending against a complaint by being perceived as a wrongdoer by the very fact of anonymity alone. Furthermore, in order to question potential jurors on voir dire about their knowledge of any of the parties, including possible connection with the corporate defendant as a possible employer of a prospective juror or a juror's family member, or even as a stockholder, the names of the parties would have to be disclosed in open court to the jurors. Even if the jury selection process was somehow conducted in secret, it is unlikely that a juror could be precluded from disclosing the names of the parties.
Questions might also arise regarding media and press access to the information. Additionally, assuming the case eventually proceeded to a money verdict, absent consent by the defendant, the judgment would be enforceable by way of execution or lien only if it set forth an identifiable plaintiff and defendant. There is also the danger that non-involved persons or entities may be falsely *505 damaged by insinuation. The potential implications and complications are virtually limitless. Simply stated, there is insufficient basis to allow this proceeding to go forward under a veil of secrecy which would be contrary to our concept and venerable tradition of public trials, and which would be more like a throw-back to long-since discarded star-chamber proceedings.
The reasoning in Doe v. Frank, supra, 951 F.2d at 324, and Southern Methodist, supra, 599 F.2d at 713, is persuasive. Although in certain rare circumstances a litigant's interest in privacy may overcome the constitutional presumption in favor of open court proceedings, mere embarrassment or a desire to avoid the potential criticism attendant to litigation will not suffice. In cases involving essentially money damage claims and employment reinstatement issues a plaintiff should not be permitted to conceal his identity from the public absent a clear and convincing showing that there exists a genuine risk of physical harm, the litigation will entail revelation of highly private and personal information, the very relief sought would be defeated by revealing the party's identity, or other substantial reasons why identification of the party would be improper.[3] Once such compelling circumstances have been shown, the litigant's privacy interest must be weighed against the constitutional and public interest in open judicial proceedings.
The trial judge here appropriately weighed these competing interests. Plaintiff has not shown that the judge mistakenly exercised his discretion in refusing to allow him to proceed anonymously. It is true that in the course of prosecuting his own litigation, plaintiff might have to reveal highly sensitive and private information. However, the public policy in favor of disclosure *506 and open proceedings has not been overcome here.[4]
Affirmed.
PETRELLA, P.J.A.D., concurring.
I write separately to address plaintiff's claim to anonymity under the LAD as set forth at length in his complaint and the arguments in his brief, as well as in the trial court's opinion. Isko v. Planning Board of Tp. of Livingston, 51 N.J. 162, 175, 238 A.2d 457 (1968).
Plaintiff contends in support of his use of a fictitious label that he suffers from a "psychiatric disorder/condition commonly known as Exhibitionism," which his psychiatrist states is "a recognized psychiatric disorder listed in the Diagnostic and Statistical Manual of Mental Disorders under the DSM-III-R 302.40."[1] This may be so. However, merely because plaintiff asserts that exhibitionism is listed as a "disorder" does not mean this equates it to a handicap under the LAD. N.J.S.A. 10:5-5(q) defines "handicapped" *507 in terms of various physical disabilities, but also includes, as a result of an amendment by L. 1978, c. 137:
any mental, psychological or developmental disability resulting from ... psychological ... conditions which prevents the normal exercise of any bodily or mental functions or is demonstrable, medically or psychologically, by accepted clinical or laboratory diagnostic techniques.
A disorder is not necessarily the equivalent of a disease or disability, particularly where these terms carry legal significance. The DSM-IV serves the purpose of categorizing psychological disorders for research, as well as providing a categorization for use in submitting medical insurance reimbursement claims, as did the DSM-III-R. Both the DSM-III-R and DSM-IV editions contain a prefatory "Cautionary Statement" which warns:
The specified diagnostic criteria for each mental disorder are offered as guidelines for making diagnoses, because it has been demonstrated that the use of such criteria enhances agreement among clinicians and investigators. The proper use of these criteria requires specialized clinical training that provides both a body of knowledge and clinical skills.
These diagnostic criteria and the DSM-IV Classification of mental disorders reflect a consensus of current formulations of evolving knowledge in our field. They do not encompass, however, all the conditions for which people may be treated or that may be appropriate topics for research efforts.
The purpose of DSM-IV [and DSM-III-R] is to provide clear descriptions of diagnostic categories in order to enable clinicians and investigators to diagnose, communicate about, study, and treat people with various mental disorders. It is to be understood that inclusion here, for clinical and research purposes, of a diagnostic category such as Pathological Gambling or Pedophilia does not imply that the condition meets legal or other nonmedical criteria for what constitutes mental disease, mental disorder, or mental disability. The clinical and scientific considerations involved in categorization of these conditions as mental disorders may not be wholly relevant to legal judgments, for example, that take into account such issues as individual responsibility, disability determination, and competency.
Thus, an illness or handicap is different from a disorder. The use of the word disorder is meant to diverge from terms such as disease, illness or defect. Indeed, there are numerous "disorders" listed in the DSM which could hardly qualify as handicaps.[2] *508 Merely because a disorder is listed in a medical reference tool such as the DSM does not automatically elevate it to the status of a handicap. Nor does the term disorder equate with the term disability.
Moreover, I do not interpret the statutory definition of "handicap" as affording a remedy under the LAD where the discrimination claim is based upon conduct by an individual claimant which would otherwise constitute a crime,[3] whether or not there is a prosecution and conviction. See N.J.S.A. 2C:14-4. It strains credulity that the Legislature would prohibit lewdness on the one hand, but condone it on the other hand, by making it a protected handicap under the LAD. Under usual rules of statutory construction, when general and specific provisions of statutes conflict, the specific provisions govern. Wilson v. Unsatisfied Claim and Judgment Fund Board, 109 N.J. 271, 278, 536 A.2d 752 (1988). Here, N.J.S.A. 2C:14-4 specifically includes in its definition of lewd acts: "the exposing of the genitals for the purpose of arousing or gratifying the sexual desire of the actor...." The definition of "handicap" in N.J.S.A. 10:5-5(q), on the other-hand is in general terms. Thus, the Legislature's specific prohibition of lewdness effectively precludes any argument that such conduct is protected under the LAD.
*509 Aside from the conflict between the LAD and the Criminal Code which plaintiff's interpretation would present, plaintiff has neither established that exhibitionism prevents the normal exercise of any bodily or mental function, nor that exhibitionism is demonstrable by accepted clinical or laboratory diagnostic techniques. Therefore, the act of exhibitionism, a disorderly persons offense under the Criminal Code, is not a "handicap" under the LAD, and in no event would support a request for anonymity.
Finally, the LAD provides that nothing in that act "shall be construed ... to preclude discrimination among individuals on the basis of ... conduct or any other reasonable standards...." N.J.S.A. 10:5-2.1. Here, any "discrimination" by defendants with respect to plaintiff was on the basis of plaintiff's own admitted conduct. Requiring an employee to refrain from criminal conduct or criminal-type conduct, whether or not criminal proceedings are instituted or completed, and even though the employee was never convicted, is a reasonable standard.
NOTES
[1] In support of his motion to proceed anonymously, plaintiff submitted the certifications of two of his treating psychiatrists, who indicated that plaintiff had admitted to them other distinct acts of exhibitionism in New Jersey which, as far as the record reflects, were not the subject of any type of proceeding or investigation. It appears that the New Jersey complainants, like those in Dallas, did not press charges.
[2] The Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) explains that:

The Paraphilias are characterized by recurrent, intense sexual urges, fantasies, or behaviors that involve unusual objects, activities, or situations and cause clinically significant distress or impairment in social, occupational, or other important areas of functioning.
[3] We do not intend to set forth any rigid standard here. In deciding the propriety of a party's use of pseudonyms the court should consider all relevant circumstances.
[4] The parties agreed to a "Stipulation and Protective Order restricting disclosure of confidential information." Under that order, applicable to documents and information produced by plaintiff pursuant to defendant's discovery requests, plaintiff could label any document or answer as "confidential," and it would be retained by counsel and disclosed only to persons directly assisting in the litigation. Experts and consultants were to similarly agree to such nondisclosure. Plaintiff has failed to satisfactorily explain why such a comprehensive and detailed protective order is insufficient to protect his privacy, particularly in view of his current residence and employment in a distant state.
[1] DSM-III-R has now been superseded by DSM-IV. The manual is a research tool for psychiatrists and related professions. Other "paraphilia" included with exhibitionism are fetishism (sexual fantasies involving nonliving objects), frotteurism (sexual fantasies involving touching or rubbing a nonconsenting person), pedophilia (sexual fantasies involving sexual activity with prepubescent children), sexual masochism (sexual fantasies involving acts of humiliation), sexual sadism (sexual fantasies involving psychological or physical suffering), transvestic fetishism (sexual fantasies involving cross-dressing), and voyeurism (sexual fantasies involving the act of observing an unsuspecting person who is naked, disrobing, or engaging in sexual activity).
[2] For example, the DSM-III-R and DSM-IV list many disorders which would not equate with a disability or a handicap in employment terms. A sampling of some of the diverse disorders include:

305.10 Nicotine dependence
302.75 Premature ejaculation
305.90 Caffeine intoxication
307.45 Sleep-wake schedule disorder
307.46 Sleepwalking disorder
301.40 Obsessive compulsive personality disorder
301.60 Dependent personality disorder
302.79 Sexual aversion disorder
[3] The Americans With Disabilities Act, 42 U.S.C. § 12211(b), which prohibits employment discrimination against individuals with certain disabilities, specifically excludes: "transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, ... or other sexual behavior disorders" as disabilities within the meaning of the act. The New Jersey Legislature, unlike Congress, apparently did not specifically consider or address similar exclusions.