879 A.2d 768 (2004)
379 N.J. Super. 447
Karla R. SMITH, Plaintiff,
v.
Scott G. SMITH, Defendant.
Superior Court of New Jersey, Chancery Division.
Decided: November 30, 2004.
Supplemented: April 18, 2005.
*769 Robert J. Durst, II, Princeton, for plaintiff (Stark & Stark, attorney).
Barbara Ulrichsen and Derek M. Freed, Lawrenceville, for defendant, (Fox Rothschild, attorney).
Jeffrey K. Epstein and Brian G. Paul, Lawrenceville, for movants, parents of plaintiff[1] (Szaferman, Lakind, Blumstein, Blader & Lehmann, attorney).
SABATINO, J.S.C.
In this divorce action presently on trial, the parents of the plaintiff-wife have moved to seal portions of the proceedings pursuant to R. 5:3-2(b). The thrust of the motion is that the movants may suffer reputational harm as the result of allegations made in this case by their son-in-law, the defendant.
The resolution of the motion requires the court to apply the "good cause" standard for sealing under Rule 5:3-2(b), a provision that has not been previously analyzed in any published matrimonial case.
For the reasons set forth below, the motion for sealing is denied.

I.
Plaintiff Karla Smith and defendant Scott Smith were married in August 1996. Two children were born of the marriage: one in October 1999 and the other in July 2001. Both plaintiff and defendant have master's degrees in business administration. In June 2001, the couple moved with their first son to Princeton, New Jersey, where they have resided since that time.
Plaintiff filed her divorce complaint in October 2003. The parties separated in December 2003, with plaintiff retaining primary residential custody of the two children in the marital home and defendant moving into a separate residence in Princeton. The parties have since observed, pendente lite, a parenting schedule that affords the defendant-husband overnights with the children on five out of every fourteen days.
The main issue being tried is whether plaintiff should be granted judicial approval to relocate, along with the two minor children, outside of the State of New Jersey. Plaintiff's father, a wealthy businessman and philanthropist who resides in South Carolina with plaintiff's mother, has offered plaintiff a job in that State.[2] *770 Plaintiff, who wishes to accept the job offer, intends to move in with her parents in South Carolina temporarily, and thereafter locate nearby permanent housing for her and the two boys.
The court is in the midst of hearing trial proofs on whether the proposed removal of the two minor children to South Carolina, which defendant fiercely opposes, comports with the standards of Baures v. Lewis, 167 N.J. 91, 770 A.2d 214 (2001), and other applicable law. In evaluating those proofs, the court must consider the potential impact of such a proposed move on the children, who are now ages five and three.
As part of his expressed reasons for resisting the proposed move, the defendant-husband contends that plaintiff and her parents tend to imbibe an excessive amount of alcohol. He claims that such drinking would put the children's care at risk and also would set a poor example. He further notes that plaintiff's only sister is a recovering alcoholic. To support his allegations on these points, defendant retained an expert on alcohol usage who evaluated the drinking patterns of plaintiff's parents. That expert is anticipated to testify in the defendant's forthcoming case-in-chief.
Plaintiff strenuously denies that she or her parents abuse alcohol or have any dependency upon intoxicating beverages. Plaintiff contends that she and her family members simply enjoy a modest amount of wine at times, and rarely imbibe to the point of intoxication. Noting that the defendant's alcohol expert found no abuse or dependency by her or by her parents, plaintiff submits that her husband's accusations that the children somehow would be endangered by alcohol usage in her family are unsupported and spiteful.
On the cusp of this trial, plaintiff's parents filed the present motion requesting the court seal the case file "with respect to any and all information and/or references" to them in this matter. In a supporting certification filed with the motion, plaintiff's father contends that defendant's accusations of alcohol abuse, "regardless of how baseless [they are], could be very damaging to my wife's and my reputations, and might have an adverse effect on future business dealings of mine should knowledge of the allegations be accessible to any interested party[3]."
Defendant has filed a letter-memorandum in opposition to the sealing application. Plaintiff has taken no position on her parents' motion. The movants and defendant have waived oral argument and have consented to this disposition on the papers.

II.
The courts of New Jersey have a long and venerable tradition of being open to the public. State v. Williams, 93 N.J. 39, 56, 459 A.2d 641 (1983) (noting that since the adoption of the modern State Constitution in 1947, "the rules governing the New Jersey courts have endorsed a strong and consistent policy in favor of open judicial proceedings").
Courts are public institutions. As Justice Douglas once wrote, "[a] trial is a public event. What transpires in a public courtroom is public property." Craig v. Harney, 331 U.S. 367, 374, 67 S.Ct. 1249, 1254, 91 L.Ed. 1546, 1551 (1947). The *771 opportunity of citizens to observe the workings of the judicial process is a vital part of our democracy. Such public access advances important constitutional values. See Richmond Newspapers v. Va. 448 U.S. 555, 587, 100 S.Ct. 2814, 2833, 65 L.Ed.2d 973, 996 (1980)(Brennan, J., concurring)(highlighting the structural role of the First Amendment "in securing and fostering our republican system of self-government").
As a general matter, open proceedings "perform numerous beneficial functions." Williams, supra at 59, 459 A.2d 641 (quoting State v. Allen, 73 N.J. 132, 159-60, 373 A.2d 377 (1977)). Among other things, public access to the courts "increase[s] the respect for the law" through fostering "an `intelligent acquaintance' with the administration of justice." Id. Open proceedings also help assure consistency and integrity in the outcomes attained through the judicial process. "The principle that justice cannot survive behind walls of silence has long been reflected in the `Anglo-American distrust for secret trials.'" Sheppard v. Maxwell, 384 U.S. 333, 349-50, 86 S.Ct. 1507, 1515, 16 L.Ed.2d 600, 613 (1966) (citing In re Oliver, 333 U.S. 257, 268, 68 S.Ct. 499, 92 L.Ed. 682 (1948)).[4]
The strong presumption of open courts in our State is embodied in R. 1:2-1, which provides in relevant part:

All trials, hearings of motions and other pretrial applications, pretrial conferences, arraignments, sentencing conferences... and appeals shall be conducted in open court unless otherwise provided by rule or statute. If a proceeding is required to be conducted in open court, no record of any portion thereof shall be sealed by order of the court except for good cause shown, which shall be set forth on the record.
[R. 1:2-1 (emphasis added).]
That general mandate has been tempered, however, for certain proceedings in the Family Part. For example, cases involving the Division of Youth & Family Services, or the adjudication of juveniles, ordinarily are closed to the public. See, e.g., R. 5:19-2(a) (presumption of confidentiality of juvenile hearings); DYFS v. J.B., 120 N.J. 112, 576 A.2d 261 (1990) (presumption of closure in DYFS child abuse and neglect cases). The purpose of these long-standing categorical exceptions is to protect the best interests of children, who might be harmed by indiscriminate disclosure or publicity in such matters. That policy of child protection is further reflected in R. 5:3-2(a), which more generally confers discretion on Family Part judges to conduct proceedings in private session "involving the welfare or status of a child."
Prior to 1984, New Jersey trial judges had the categorical option under former R. 5:5-1(b) to conduct any matrimonial matter in private, even if the matter did not involve children. After considerable debate, our Supreme Court revised (and renumbered) that provision in 1983 and again in 1992. The 1992 revision followed a divided report on the subject submitted to the Court by its standing Committee on Family Practice. See Committee on Family Practice, 130 N.J.L.J. 565, 567 (1992).
A minority of the Family Practice Committee members for the 1990-92 rules cycle *772 had advocated that the traditional presumption of openness in matrimonial trials be reversed, replacing it with a presumption of closure. The Committee minority recommended to the Supreme Court a revised Rule that would declare confidential "all pleadings, expert reports, verbatim records, investigations, correspondence, judicial notes, notices, case information statements and evidence in all civil family actions," except for final judgments of divorce and subsequent orders modifying those judgments. N.J. Admin. Office of the Courts, Family Division Practice Comm. Report 1990-1992, 31 (1992) (unpublished report on file with Administrative Office of the Courts, Family Division). Under that proposed Rule, confidentiality would have been maintained unless the trial court specifically found good cause to undo it. Ibid.
In support of its position, the 1990-92 Committee minority argued that "[t]he sensitive and personal nature of matters handled in the Family Court mandates a special handling of the records of [that] court." Id. at 26. It noted that Family Court files often include psychological, medical, social and economic reports, as well as other documents revealing highly personal information. Allowing unfettered public access to such court documents may inhibit the candor of litigants who participate in counseling, evaluations and other Family Court programs, out of fear that such information might get into the hands of "neighbors, alleged friends, former spouses and opposing counsel." Id. at 27. The minority therefore urged the Supreme Court to adopt a Rule that would protect litigants "from the detrimental effects of public revelation of private allegations." Id. at 29.
The majority of the 1990-92 Family Practice Committee members opposed the suggested rule change. The majority contended that such a rule was unnecessary and out of step with the overwhelming practice of family courts in other states. Id. at 8-10. The majority recognized that the minority's concerns about potential harms flowing out of public access to Family Court records had "a certain seductive appeal." Id. at 11. Nevertheless, it concluded that such concerns "on balance, do not warrant a drastic revision of existing procedures in the absence of any demonstrable problem." [Ibid.]
The Committee majority pointed out that the Family Court is not unique in presiding over cases that can involve enormous personal embarrassment, such as rape trials in the Criminal Part and medical malpractice lawsuits in the Civil Part. Id. at 14-16. Despite the obvious sensitivity of such other matters, they are routinely tried in public courtrooms. Openness is the norm, not the exception. With that tradition in mind, the majority submitted that "the better rule, which more appropriately balances the public interest in an open system with the need to protect private interest, is to permit the court upon application of a party to seal all or a portion of a [Family Part] file." Id. at 17.
Faced with this pointed disagreement of policy, the Supreme Court in 1992 accepted the recommendation of the Committee majority and adopted its suggested version of Rule 5:3-2(b), now reads:
The court, upon demonstration of good cause and notice to all interested parties, shall have the authority to order that a Family Part file, or any portion thereof, be sealed.
This court's research has not disclosed a single published case since 1992 that found "good cause" for closure in a New Jersey divorce action. Although there is authority to maintain confidentiality of the plaintiff's address in domestic violence cases, see N.J.S.A. 2C:25-26(c) and Pepe v. Pepe, 258 N.J.Super. 157, 609 A.2d 127 (Ch.Div. *773 1992), that authority is inapplicable to this divorce action, in which no domestic violence charges were filed. The present motion for sealing thus has no point of precedential comparison under the existing Rule.
There are, however, some related authorities in our case law that offer guidance. In Stern v. Stern, 66 N.J. 340, 331 A.2d 257 (1975), a matrimonial case involving a prominent lawyer accused of adultery, the Supreme Court parenthetically overturned the lower courts' decision to report the case with the parties' initials rather than with their full names. In a footnote explaining its decision to reveal the litigants' identities, the Court observed:
While we continue to believe that the use of initials in order to disguise the true identity of litigants serves a legitimate end where the interests of minor children are concerned, as well as upon other miscellaneous but rare occasions, we do not approve a resort to this practice where the effort is to throw the protective cloak of anonymity over a successful and well-known member of the bar, as would appear to have been the case here.
[Id. at 343, n. 1, 331 A.2d 257 (emphasis added).]
The Court's quoted admonition in Stern suggests that the mere embarrassment of parties connected to a divorce action, without a showing that public disclosure of those embarrassing details also would have a detrimental impact upon minor children, is insufficient to shield the proceedings from open view.
Further insight may be gleaned from the Appellate Division's treatment of litigant privacy concerns in a 1995 civil case, A.B.C. v. XYZ Corporation, 282 N.J.Super. 494, 660 A.2d 1199 (App.Div.1995). The plaintiff in A.B.C., an admitted sexual exhibitionist, claimed that he suffered from a handicap of mental illness and that he had been illegally discharged from his employment because of that handicap in violation of the Law Against Discrimination. N.J.S.A. 10:5-1 to -42. Plaintiff filed his lawsuit anonymously. In support of his application to pursue the lawsuit in that fashion, plaintiff submitted to the trial court affidavits from two of his treating psychiatrists. One of the psychiatrists opined that it was important for plaintiff to be able to pursue his lawsuit in confidence because of the public's attitude of intolerance towards exhibitionists. Id. at 499, 660 A.2d 1199.
Nevertheless, the trial court in A.B.C. rejected the plaintiff's request to proceed anonymously. Sustaining that determination, the Appellate Division observed:
Even if we limit our consideration [of anonymity requests by litigants] to civil tort cases, whether or not emotional distress claims are involved, many personal and private matters of necessity become parts of the public record because the parties choose to litigate in the public forum which the court provides. The same is true in the usual Family Part case.

[A.B.C., Supra, 282 N.J.Super. at 500-01, 660 A.2d 1199 (emphasis added).]
The appellate panel continued:
Although in certain rare cases a litigant's interest in privacy may overcome the constitutional presumption in favor of open court proceedings, mere embarrassment or a desire to avoid the potential criticism attendant to litigation will not suffice.

[Id. at 505, 660 A.2d 1199 (emphasis added).]
Weighing the plaintiff's privacy concerns against the public interest in open courts, the Appellate Division agreed with the trial *774 court that the plaintiff's request to keep his identity shielded was unjustified. Id. at 505-06, 660 A.2d 1199.
Here, the plaintiff's parents are likewise motivated by concerns of embarrassment and reputational harm in pursuing their application to seal all references to them in this divorce action. They are especially worried that the defendant's allegedly false portrayal of themas heavy drinkers who are unfit to serve as role models for their grandchildrenwill be repeated outside of this courtroom. They submit that those accusations, which they regard as scurrilous, are apt to interfere with their business, charitable and social relationships.[5]
The desire of movants to preserve their reputations, and to prevent the dissemination of what may prove at the end of trial to be unsupported innuendo, is entirely understandable. No one wants to be smeared in a public forum. On balance, however, those personal interests do not suffice on the present record to overcome the strong presumption of open judicial proceedings. Moreover, as explained below, there are other countervailing measures that may abate any negative collateral effects of disclosure.
To be sure, the contention that a person abuses or is dependent on alcohol is a serious accusation. Even if, for the sake of argument, that accusation is ultimately proven to be untrue, its proclamation in a public forum has the capacity to be stigmatizing. Nevertheless, courts in other contexts that likewise involve claims of excessive drinking are not prone to seal the case files or to close the courtroom doors. See, e.g., Doe v. Frank, 951 F.2d 320 (11th Cir.1992) (denying the request of an alcoholic postal worker to pursue his handicap discrimination case under a pseudonym). Indeed, if the potential for such embarrassment about one's alleged drinking behavior were a sufficient basis for closure, practically every D.W.I. or Dram Shop case would have to be tried before a secret tribunal.
The court is mindful that the movants are not named as parties to this divorce action. As a general proposition, the court conceives that the privacy interests of witnesses and of other non-parties deserve greater solicitude from the court than those of litigants who have chosen to avail themselves of the judicial process to settle their disputes. See, e.g., N.J.R.E. 611(c) (authorizing trial courts to protect testifying witnesses "from harassment or undue embarrassment"). However, the posture of this particular case is one in which the plaintiff's parents are not incidental by-standers. In fact, the South Carolina job offer tendered by plaintiff's father to his daughter manifestly played a major role in precipitating this removal litigation. From a functional perspective, the movants are *775 central players in this dispute. They hardly can be surprised that the ensuing trial has provoked hard feelings and harsh accusations against them.
The court also notes that the movants do not live or do any business in the State of New Jersey, where this case is venued. Their business, charitable and social activities all take place in other parts of the country. Any impact of a public trial in New Jersey upon their reputations would be far more significant if they had local ties. The absence of such local connections diminishes the asserted need for protective relief.
Further, the movants make no claim that sealing is necessary to protect the welfare of their grandchildren. Instead, the only harm they posit is harm to their own reputations and financial interests. The court has before it no affidavit, for example, from a psychologist opining that the records of this case need to be impounded in order to shield the children from disconcerting accusations about their maternal grandparents. Nor are there any claims of sexual assault, child abuse or other extreme or sensational misconduct. The motion's focus, directed as it is away from the children, weighs against upsetting the strong presumption of conducting the business of this court in open session.
As the Appellate Division recognized in passing in A.B.C., Supra, 282 N.J.Super. at 500-01, 660 A.2d 1199, matrimonial litigation often draws out pejorative accusations from the litigants. Contested divorce cases, by their very nature, tend to be emotional and bitter. Unfortunately, the family members and business associates of the divorce combatants at times get caught in the crossfire. Although the court system has made considerable strides to abate the enmity of divorce cases through mediation and counseling programs, it is well nigh impossible to strip that enmity from the matrimonial docket. The Supreme Court has yet to declare that such inherent animosity warrants the conversion of our family courts into private dispute centers.
The selective sealing of court files also imposes administrative burdens on judiciary staff. These burdens can be significant, depending upon the nature of the sealing request, and the extent of any redactions to court documents that are needed. Here, the literal enforcement of movants' requests to seal "any and all" references to them in this divorce case would require not only the masking of their trial testimony, but also would involve segregating the portions of testimony of other trial witnesses that refer to them, as well as extensive redacting of certifications, briefs, and pleadings already filed with the court. Having assessed the competing interests involved, the court finds that such a burdensome search-and-redact exercise is not justified in this case.
The day may come, and perhaps it will be soon, when all courthouse filings are routinely harvested in data banks and instantly transmitted around the world via the internet. Electronic filing is rapidly becoming the norm in federal court, and our state courts are not far behind. The digital storage of such filings may well make them far easier to retrieve by outsiders. It is not hard to imagine that each scurrilous allegation contained in some court filing could eventually turn up in a "Google search." Such broadcasted diatribe has the capacity to defame not only celebrities and public officials, but also average citizens whose backgrounds could be researched on the World Wide Web by prospective employers, business associates, loan officers, government regulators, social clubs, and perhaps even would-be Saturday night dates.
Those looming technological developments may warrant the judiciary to reconsider, *776 prospectively, the current balance of interests in favor of open court proceedings. But that future policy choice is one reserved for the Supreme Court.[6] At the present, this trial court cannot conclude that the movants' embarrassment and dismay over what the defendant is saying about them in this case is enough to tip the balance in favor of sealing and closure.
Lastly, the court notes that there are other ways, short of sealing and closure, through which unfounded contentions in matrimonial litigation may be deterred and redressed. For one thing, the New Jersey statutes and court rules expose lawyers and their clients to sanctions for making frivolous claims. See N.J.S.A. 2A:15-59.1; R. 1:4-8. In addition, fee-shifting may be warranted in matrimonial cases where a litigant has acted in bad faith. See R. 5:3-5(c). Scandalous material contained in pleadings may be stricken on motion. See R. 4:6-4(b); DeGroot v. Muccio, 115 N.J.Super. 15, 277 A.2d 899 (Law Div. 1971). Additionally, the tort of abuse of process offers a potential, albeit limited, cause of action to obtain redress from a vexatious litigant in appropriate circumstances. See Earl v. Winne, 34 N.J.Super. 605, 614, 112 A.2d 791 (County Ct.Law Div.1955).
Apart from these formal remedies, the prospect of vindication in the case itself may offer the most effective means of recovering from any reputational harm caused by adversarial mud-slinging. If, for example, the defendant here is unable to prove that his in-laws indeed have a drinking problem, this court will make a corresponding finding of fact.[7] That finding may be of much greater value to the movants than a prophylactic court order sealing all references to them in the case, a judicial act which might do more to arouse suspicions than to quell rumors.
In sum, the court finds that the record before it, viewed in the light of our State tradition of open courts and the legislative history of R. 5:3-2(b), does not support good cause to seal any parts of this trial record under that provision.
NOTES
[1] See note 2, infra.
[2] Although the court denies the sealing motion, it sees no functional necessity to identify movants by name in this opinion. The specific identities of the movants have no bearing on the court's legal analysis herein. However, consistent with the principles of an open judiciary that warrant denial of the motion, the movants' names shall remain accessible in the unsealed case file.
[3] Although not underscored in the motion, the trial proofs involve other unflattering matters, including charges that plaintiff's father made threatening statements to coerce his future son-in-law to sign a prenuptial agreement.
[4] As the great legal historian William Blackstone explained the English tradition of public trials, "[the] open examination of witnesses viva voce, in the presence of all mankind, is much more conducive to the clearing up of truth, than the private and secret examination taken down in writing before an officer, or his clerk." 3 WILLIAM BLACKSTONE, COMMENTARIES *373, available at http://www.yale.edu/lawweb/ avalon/blackstone/bk3ch23.htm (last visited Nov. 29, 2004).
[5] The court expresses no view here regarding the merits of the allegations of excessive drinking having heard so far only part of the testimony on the subject. Nevertheless, the present motion is ripe for disposition.

As a matter of sound procedure, the court finds that applications for closing or sealing warrant prompt attention and should not await the full presentation of the disputed proofs. A wait-and-see approach would be apt to create administrative difficulties, particularly if spectators had been in court during the presentation of the matters at issue or if third parties had already obtained access to court documents that were not originally filed under seal. Once the material has been released into the public domain, it may be impractical, and perhaps unconstitutional, to restrain its further dissemination. See N.Y. Times Co. v. United States, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971) (interpreting the First Amendment to prohibit prior restraint on speech, except in extraordinary circumstances involving risks to national security and the like).
[6] This court takes no position on that more general debate, other than to suggest that the rapid advances in communication achieved since R. 5:3-2(b) was last reviewed twelve years ago should be factored into the discussion.
[7] For sake of completeness, the court notes that in February 2005, after a 28-day trial, it found that defendant failed to prove by a preponderance of the evidence that plaintiff or her parents imbibed alcohol in a manner detrimental to the welfare of the minor children. However, for independent reasons, it denied plaintiff's request to relocate the minor children to South Carolina. Although the court's removal determination has been appealed, its ruling on the sealing and closure issues addressed in this opinion were not appealed. The trial was conducted in an open courtroom, and no trial exhibits were sealed.