MR. KADONSKY: I was involved in a conspiracy with David Weinstein where he was in—he managed and operated the facility, so from that standpoint he would ask me questions from time to time as to the operations, *so from that standpoint, yes.*

[Emphasis added.]

In light of such factual admissions, it is incomprehensible to fathom how defendant can now argue that there was an inadequate basis for the acceptance of his plea and that the conspiracy with which he was charged was not consummated. The factual basis for the acceptance of the plea is amply contained in the excerpts from the transcripts of court proceedings set forth above. As for the conspiracy charge, the factual admissions by defendant as above noted are replete with overt acts. *See State v. Moretti,* 52 *N.J.* 182, 186, 244 *A.*2d 499, *cert. denied,* 393 *U.S.* 952, 89 *S.Ct.* 376, 21 *L.Ed.*2d 363 (1968); *State v. Dennis,* 43 *N.J.* 418, 423, 204 *A.*2d 868 (1964).

Accordingly, defendant's conviction and sentence are affirmed.

671 A.2d 1068

T.S.R., PLAINTIFF–RESPONDENT, v. J.C., DEFENDANT–APPELLANT, AND THE P.C.U.S.A.; THE P.S. OF THE N.; THE P. OF E.; THE P.C. AT P; JANE DOE(S) AND JOHN DOE(S), MEMBERS OF THE S. OF THE P.C. AT P., DEFENDANTS.

H.W.H., JR. AND K.H., PLAINTIFFS–RESPONDENTS, v. J.C., DEFENDANT–APPELLANT, AND THE P.C.U.S.A.; THE P. OF E.; THE P.C. AT P.; JANE DOE(S), MEMBERS OF THE S. OF THE P.C. AT P.; THE O.T.P.C.; JANE DOE(S) AND JOHN DOE(S), MEMBERS OF THE S. OF THE O.T.P.C., DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued November 29, 1995—Decided February 29, 1996.

Kleiner, J.A.D., dissented and filed opinion.

Before Judges KING, LANDAU and KLEINER.

*Robert W. Smith* argued the cause for appellant (*Wilentz, Goldman & Spitzer,* attorneys; *Mr. Smith,* of counsel and on the brief).

*John W. Thatcher* argued the cause for respondents (*Thatcher & Lanza,* attorneys; *Franklin G. Whittlesey,* on the brief).

The opinion of the court was delivered by

KING, P.J.A.D.

## I.

These cases involve two claims for compensatory and punitive damages for sexual molestation brought pursuant to *N.J.S.A.* 2A:61B–1 against a minister, his local church and its hierarchy. The defendants want the case to proceed against them secretly and anonymously, at least to the stage of a ruling on the validity of their statute-of-limitation defense. The plaintiffs want full public disclosure. The Law Division judge ruled against anonymity of the parties or events to any extent. We granted leave to appeal to examine his ruling and now affirm. *R.* 2:2–3(b).

## II.

Plaintiffs H.W.H. and T.S.R. filed separate civil complaints on about February 7, 1995. They alleged that they were "sexually molested and battered," in violation of *N.J.S.A.* 2A:61B–1, by defendant J.C., their former minister. The plaintiffs used the full names of all parties. Both plaintiffs also named as defendants the churches which employed and supervised J.C. as well as supervising members or officials of those churches and the church hierarchy. T.S.R. and H.W.H. sought to hold the defendants "jointly and severally liable for compensatory damages, punitive damages, interest, costs of suit, attorney fees and such other relief as the Court or jury may deem proper, in accordance with *N.J.S.A.* 2A:61B–1," a relatively new statute, *L.*1992, *c.* 109, providing a cause of action for sexual abuse.

On February 14, 1995 defendant J.C. filed motions for emergency relief, requesting an order: (1) requiring that the complaints be dismissed or immediately sealed, (2) prohibiting plaintiffs from filing any further pleadings or documents containing names, addresses, or identities, and (3) imposing sanctions upon plaintiffs' counsel. Judge Nicola entered orders dated April 17 sealing the filed documents, dismissing the complaints, and allowing plaintiffs to refile their complaints using initials or fictitious names. The

order also provided that all depositions, hearings, and court proceedings be conducted in closed sessions, not open to the public.

On April 28 plaintiffs filed motions for reconsideration. Judge Nicola then recused himself for undisclosed reasons and Judge Hamlin heard the motions for reconsideration, reasoning that "given the weight of the issue, the short notice return date ..., and the seriousness of the issue, [ ] equity requires that the Court reconsider the issue." *See Johnson v. Cyklop Strapping Corp.*, 220 *N.J.Super.* 250, 263, 531 *A.*2d 1078 (App.Div.1987). In orders dated July 7, 1995, Judge Hamlin granted plaintiffs' motions for reconsideration and rescinded the orders entered by Judge Nicola. Judge Hamlin's orders also provided for an automatic stay pending J.C.'s motion for leave to appeal and this court's resolution of that motion. We granted leave to appeal and consolidated the cases on August 21, 1995.

Plaintiffs allege that J.C. repeatedly sexually molested T.S.R. and H.W.H. from 1979 through 1982. When these incidents occurred, plaintiffs were between ages eleven and thirteen. Both plaintiffs are now in their late twenties. J.C. was the minister of the church attended by plaintiffs' families, and he allegedly used their trust in him and the authority of his position to perpetrate these assaults and to insure the boys' silence. Plaintiffs also allege that the defendant church officials conducted an investigation and decided to proceed with formal church charges against J.C. but that he chose to leave the ministry and thus to forego a formal inquiry. In contrast, J.C. contends that he was forced from his ministry by plaintiffs' baseless accusations.

Though defendants have not yet filed answers to the complaints, J.C. contends through counsel that he "denies the substance of any and all allegations of sexual misconduct." He also considers the claims "frivolous" since he believes them time-barred, as this is not a repressed-memory case. J.C. stresses that both T.S.R. and H.W.H. would have been well aware of any offensive conduct from the outset, had it occurred.

The record also discloses that the church has circulated at least three letters among its congregants during August of 1994 relating to the allegations made by T.S.R. and H.W.H. The letters do not name T.S.R. and H.W.H. but they do name J.C. Apparently, the letters were widely circulated within the congregation, although each contains a caution asking members to keep the matter within the "church family."

## III.

■ Judge Nicola originally granted the protective orders sought by the defense, holding that *N.J.S.A.* 2A:61B–1 requires that real names not be used for any parties when complaints are brought under the statute. We disagree and find that the statute grants only the plaintiff-victim the option of refusing to disclose identifying information.

*N.J.S.A.* 2A:61B–1(f) L.1992, c. 109, § 1. provides:

(1) The name, address, and identity of a victim or a defendant shall not appear on the complaint or any other public record as defined in P.L.1963, c, 73 (C. 47:1A–1 et seq.). In their place initials or a fictitious name shall appear.

(2) Any report, statement, photograph, court document, complaint or any other public record which states the name, address and identity of a victim shall be confidential and unavailable to the public.

(3) The information described in this subsection shall remain confidential and unavailable to the public *unless the victim consents to the disclosure or if the court, after a hearing, determines that good cause exists for the disclosure.* The hearing shall be held after notice has been made to the victim and to the defendant and the defendant's counsel.

(4) Nothing contained herein shall prohibit the court from imposing further restrictions with regard to the disclosure of the name, address, and identity of the victim when it deems it necessary to prevent trauma or stigma to the victim.
[emphasis supplied.]

■ When resolving questions of statutory construction, our function is to implement the intent of the legislature. *See, e.g., State v. Sutton,* 132 *N.J.* 471, 479, 625 *A.*2d 1132 (1993); *State of New Jersey v. Maguire,* 84 *N.J.* 508, 514, 423 *A.*2d 294 (1980). If the plain language of the statute is clear and unambiguous, we need not look beyond the text to determine legislative intent. *State v. Butler,* 89 *N.J.* 220, 226, 445 *A.*2d 399 (1982). With

regard to *N.J.S.A.* 2A:61B–1(f), the clear language of section f(3) provides for the disclosure of parties' identities in two circumstances—if the victim consents or if a judge decides that good cause exists.

■ Arguably, however, an ambiguity arises when considering section f(3) in tandem with section f(1), which simply states that initials or fictitious names "shall" be used for all parties. When a statute includes provisions which appear inconsistent, we must examine the history and purpose of the act in order to ascertain the underlying or true legislative intent. *Sutton, supra,* 132 *N.J.* at 479, 625 *A.*2d 1132. We also must seek an interpretation that will "make the most consistent whole of the statute." *State v. A.N.J.,* 98 *N.J.* 421, 424, 487 *A.*2d 324 (1985).

The legislative history of the statute does not directly address this seeming conflict. Judge Hamlin concluded that the "overriding concern" of the statute was to protect the victim. Though he expressed concern that innocent people might be wrongly accused of sexual misconduct, he concluded:

> It seems to me relatively clear ... that the right to secrecy is one that is at the option of the victim, of the alleged victim....

> I am satisfied that given the overall nature of the language of the statute and the use of the terms "victim" and "shall," that a clear reading, even where there is some ambiguity, must be resolved in favor of the remedial purpose, to protect the victims of sexual misconduct.

This is a reasonable conclusion. Sections f(1) and f(2) set out the general rule of non-disclosure. Section f(3) seems clearly intended to provide exceptions to that general rule; the information may be made public if the victim consents or if a judge determines, after a hearing, that good cause exists. It is also worth noting that section f(4) allows for "further restrictions" on disclosure if "necessary to prevent trauma or stigma to the victim." Any possible trauma or stigma to the defendant is conspicuously absent as a factor for consideration. Finally, even the fact that section f(1) provides initially and generally for the anonymity of a defendant may well reflect concern for and an intention to protect the identity of the victim only. In many cases

of sexual abuse of children, the perpetrator is a parent or close relative; in such a case, publicly revealing the defendant's identity would be tantamount to revealing the victim's identity.

The entire tenor of this 1992 statute is the protection of victim's rights. See Note, "Damages, Duress and the Discovery Rules: The Statutory Right of Recovery for Victims of Childhood Sexual Abuse," 17 *Seton Hall L.J.* 505, 507 (1993). There is no suggestion in the act or any of its extant history of any intent to shield alleged sexual molesters with anonymity if the victim opts to proceed publicly.

## IV.

We turn to the question of whether the judge abused his discretion in refusing the defendants' request to allow the litigation to proceed anonymously. *R.* 1:4–1(a)(1) provides that, generally, every paper filed in an action should identify all of the parties. Further, *R.* 1:2–1 provides that all proceedings "shall be conducted in open court unless otherwise provided by rule or statute," and prohibits the sealing of court records except "for good cause shown." Courts have inherent "equitable powers ... over their own process, to prevent abuses, oppression, and injustices." *Seattle Times Co. v. Rhinehart* 467 *U.S.* 20, 35, 104 *S.Ct.* 2199, 2209, 81 *L.Ed.*2d 17, cert. denied, 467 *U.S.* 1230, 104 *S.Ct.* 2690, 81 *L.Ed.*2d 884 (1984). Our Supreme Court recently explained, on August 2, 1995, after this case before us was decided in the Law Division:

> There is a presumption of public access to documents and materials filed with a court in connection with civil litigation. That right exists under the common law as to the litigants and the public ... But the right of access is not absolute. Under both the common law and the First Amendment, a court may craft a protective order. "[T]he strong common law presumption of access must be balanced against the factors militating against access. The burden is on the person who seeks to overcome the presumption of access to show that the interest in secrecy outweighs the presumption."
>
> [*Hammock by Hammock v. Hoffmann–LaRoche, Inc.*, 142 *N.J.* 356, 378, 662 *A.*2d 546 (1995).]

As we have stated, "[U]nder case law and the Rules of Court, a judge has some discretion to relax *R.* 1:2–1 and enter an order limiting or even prohibiting access to certain judicial proceedings and records." *Zukerman v. Piper Pools,* 256 *N.J.Super.* 622, 627, 607 *A.*2d 1027 (App.Div.), certif. denied, 130 *N.J.* 394, 614 *A.*2d 617 (1992).

Defendant J.C. urges that, even if anonymity is not required by statute, he has shown sufficient good cause to require that his anonymity be protected for equitable reasons. Although Judge Hamlin recognized that he could, for equitable reasons, possibly allow defendant J.C. to litigate anonymously, he declined. He said that the equitable power to restrict public access "should be exercised discretely and with great reservation." He pointed out that other Middlesex County cases involving church officials accused of sexual abuse were "uniformly open in nature." He also pointed to the letters circulated by the church and observed that "the equitable argument loses much of its vitality when, in fact, the concerned churches themselves, to their own congregants, [are] revealed by name." We agree with the judge's sound exercise of discretion in this regard.

Recently, we considered the standards for whether a case should proceed in anonymity in *A.B.C. v. XYZ Corp.,* 282 *N.J.Super.* 494, 660 *A.*2d 1199 (App.Div.1995). Historically, both civil and criminal trials have been presumptively open. *Richmond Newspapers, Inc. v. Virginia,* 448 *U.S.* 555, 580, 100 *S.Ct.* 2814, 2829, 65 *L.Ed.*2d 973, 992 n. 17 (1980). The United States Supreme Court has observed that "[w]hat transpires in a courtroom is public property" and the judiciary does not possess a right, "as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire in proceedings before it." *Craig v. Harney,* 331 *U.S.* 367, 374, 67 *S.Ct.* 1249, 1254, 91 *L.Ed.* 1546, 1551 (1947).

█ As we have explained:

> Court proceedings are public proceedings and the names of the parties and their addresses are essential not only to identify the various parties, but also in

connection with aspects of the judicial process such as discovery, motion practice, jury selection, and execution to enforce money judgments. As a corollary, proper identification of a party assures against misidentification of some other party as being involved. There is a constitutional and customary presumption of openness in all judicial proceedings, except in juvenile court proceedings.

[*A.B.C., supra*, 282 *N.J.Super.* at 499, 660 *A.*2d 1199.]

Though this presumption of openness exists, it can be overcome. Our Supreme Court has acknowledged that disguising the identity of litigants "serves a legitimate end where the interests of minor children are concerned, as well as upon other miscellaneous but rare occasions." *Stern v. Stern*, 66 *N.J.* 340, 343 n. 1, 331 *A.*2d 257 (1975).

There is no bright-line rule available for determining whether specific circumstances present one of these rare occasions. We observed in *A.B.C.* that federal courts have used a balancing test, weighing the public interest in open proceedings against the particularized injury which a party will suffer if anonymity is lost. *A.B.C., supra*, 282 *N.J.Super.* at 501, 660 *A.*2d 1199. In *Doe v. Stegall*, 653 *F.*2d 180 (5th Cir.1981), for example, the court allowed a mother and her children to use fictitious names when challenging the constitutionality of prayer and bible reading in Mississippi public schools, reasoning that the plaintiffs faced a realistic fear of harassment and violence. *Id.* at 186. The Fifth Circuit stated:

We advance no hard and fast formula for ascertaining whether a party may sue anonymously. The decision requires a balancing of considerations calling for maintenance of a party's privacy against the customary and constitutionally-embedded presumption of openness in judicial proceedings.

[*Ibid.*]

In *Doe v. Frank*, 951 *F.*2d 320 (11th Cir.1992), the plaintiff sought to proceed anonymously when prosecuting a claim alleging that he had been discriminated against because of his alcoholism. The court concluded that anonymity was not appropriate, stating:

[T]he stigma involved in Doe's disclosure does not rise to the level necessary to overcome the presumption of openness in judicial proceedings....

Lawsuits are public events. A plaintiff should be permitted to proceed anonymously only in those exceptional cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of a plaintiff's identity. The risk that a plaintiff may suffer some embarrassment is not enough.

[*Id.* at 324.]

Similarly, the court in *Coe v. United States District Court for the District of Colorado,* 676 *F.*2d 411 (10th Cir.1982), found that the public interest in open proceedings outweighed the privacy interest of a physician accused of sexual misconduct with his patients. *Id.* at 418.

In *A.B.C.,* we considered whether a plaintiff who alleged that his former employer had violated the Law Against Discrimination by firing him because he was afflicted with a sexual disorder known as exhibitionism should be permitted to proceed anonymously. Relying on the federal cases we have discussed, the *A.B.C.* panel held that anonymity was not appropriate, stating:

Common sense dictates that the disclosure of the identity of this plaintiff is not protected by any statute or rule of court and would be no more detrimental than disclosure of the identity of the doctor accused of sexual impropriety in *Coe v. United States District Court,* or of the alcoholic plaintiff in *Doe v. Frank* * * *

Although in certain rare circumstances a litigant's interest in privacy may overcome the constitutional presumption in favor of open court proceedings, mere embarrassment or a desire to avoid the potential criticism attendant to litigation will not suffice.

[*A.B.C., supra,* 282 *N.J.Super.* at 503, 505, 660 *A.*2d 1199.]

J.C. argues that "disclosure will work a clearly defined and serious injury to [him] and his family." He maintains that "[t]o allow this case to proceed without a protective order will most likely result in public dissemination of baseless and/or meritless allegations of sexual misconduct and further damage the lives, reputations and dignity of defendant J.C. and his family." If, as J.C. suggests, these mere accusations are tantamount to an irreparable injury sufficient to outweigh the public's interest in open proceedings, then he is really asking us to effectively grant all defendants accused of sexual abuse in civil cases the right to defend anonymously, a result which hardly comports with a philosophy granting anonymity only in rare circumstances.

While public allegations of sexual abuse may embarrass or stigmatize J.C., his argument does not accord sufficient weight to the policy reasons underlying the presumption of public access to court documents and proceedings. J.C. points to the fact that

plaintiffs' counsel has suggested that the possibility of public disclosure would provide an incentive to settlement and urges us not to "condone these improper, bad faith motives for requesting that this matter proceed publicly." But there are other weighty considerations. The pertinent statute, *N.J.S.A.* 2A:61B–1, does not favor defendants' position. The defendant church has already circulated to its membership information identifying the defendant J.C. and discussing the underlying allegations. The public should not be excluded from information already widely disseminated.

 The public has a strong interest in open access to court records and proceedings. Our Supreme Court, in deciding whether a citizen-advocacy group intervening in a products liability action ought to have access to discovery-related documents which had been placed under seal, recently examined the strength of the public's interest in court proceedings. In *Hammock, supra,* 142 *N.J.* at 356, 662 *A.*2d 546, the Court stated:

> Independent of the interests of the parties and their attorneys in the litigation that comes before our courts, there is a profound public interest when matters of health, safety and consumer fraud are involved ... That heightened interest requires that trial courts be more circumspect when deciding whether to seal or unseal records used in litigation. [*Id.* at 379, 662 *A.*2d 546.]

As one commentator has explained, access to open judicial proceedings and the parties' identities

> tends to sharpen public scrutiny of the judicial process, to increase confidence in the administration of the law, to enhance the therapeutic value of judicial proceedings, and to serve the structural function of the first amendment by enabling informed discussion of judicial operations.
>
> [Joan Steinman, *Public Trial, Pseudonymous Parties: When Should Litigants be Permitted to Keep Their Identities Confidential?,* 37 *Hastings L.J.* 1, 36 (1985).]

Steinman observes the cases also suggest that sometimes a greater than ordinary public interest exists in disclosure of a litigant's identity. Cases that involve public servants such as judges or members of Congress are often in this category. Individuals who have professional responsibilities to the public, *e.g.*, doctors and lawyers, may also be included. "By virtue of their societal roles, such persons have a reduced expectation of privacy as to some matters because the public has a legitimate interest in their

activities." Steinman, *supra,* 37 *Hastings L.J.* at 84. And further:

> There is also an unusually great public interest in the litigant's identity when the litigant poses a threat to the community. Thus, there is a public interest in knowing who is likely to be physically dangerous because of drug addiction or mental illness, and in knowing who has allegedly acted criminally or in violation of professional ethics.
>
> [*Ibid.*]

A minister such as J.C. might well be considered to have a responsibility to the public equivalent to a doctor or lawyer, and if these allegations are true, he also surely "acted criminally or in violation of professional ethics." Steinman also suggests that the use of pseudonyms:

> may tend to undermine the confidence of the public in the administration of the law. Intuitively, one feels less able to judge the fairness of judicial proceedings pursued by unknown parties. Even if the record reveals enough about the plaintiff or defendant to allow an apparently adequate appraisal of the proceedings, the record may not quell all suspicions that the secret identity of a party or parties influenced the decision. The appearance of fairness is thus lost.
>
> [*Id.* at 36.]

We have also observed that disclosure of names may serve a defendant's interests, since "[d]efendant might well be ... perceived as a wrongdoer by the very fact of anonymity alone." *A.B.C., supra,* 282 *N.J.Super.* at 504, 660 *A.*2d 1199. "Regardless of any inconvenience defendant may face in these civil proceedings, it must be remembered that 'the law is not compelling the parties to do anything but disclose the truth.'" *Shaw v. Riverdell Hospital,* 150 *N.J.Super.* 585, 591, 376 *A.*2d 228 (Law Div.1977) (quoting *National Freight, Inc. v. Ostroff,* 133 *N.J.Super.* 554, 559, 337 *A.*2d 647 (Law Div.1975)). If the allegations are baseless, public records and public proceedings are, in part, designed to lead to public exoneration.

In addition, disclosure eliminates the danger that individuals or entities not connected with the litigation might be wrongfully perceived as involved and damaged by insinuation. *A.B.C., supra,* 282 *N.J.Super.* at 504–05, 660 *A.*2d 1199. "The potential implications and complications are virtually limitless." *Id.* at 505, 660 *A.*2d 1199. Absent a strong showing by the party urging anonym-

ity of particularized harm, allowing a "proceeding to go forward under a veil of secrecy ... would be more like a throw-back to the long-since discarded star-chamber proceedings." *Ibid.*

Finally, J.C. contends that his claim for anonymity should prevail because he invokes it only until resolution of the statute of limitations issue. If he loses on that issue, the cloak of anonymity could then be lifted. Since this is not a "repressed memory" case, the defense is confident that the statute of limitations defense will prevail.

The claim for "temporary anonymity" pending resolution of the time-bar issue has a surface appeal but is complicated in this particular situation by the sexual abuse statute's, *N.J.S.A.* 2A:61B–1(b) and (c), peculiar period of limitations sections, which state:

> b. In any civil action for injury or illness based on sexual abuse, the cause of action shall accrue at the time of reasonable discovery of the injury and its causal relationship to the act of sexual abuse. Any such action shall be brought within two years after reasonable discovery.
>
> c. Nothing in this act is intended to preclude *the court* from finding that the statute of limitations was tolled in case because of the plaintiff's mental state, duress by the defendant, or any other equitable grounds. *Such a finding shall be made after a plenary hearing, conducted in the presence of the jury.* At the plenary hearing *the court* shall hear all credible evidence and the Rules of Evidence shall not apply, except for Rule 4 or a valid claim of privilege. The court may order an independent psychiatric evaluation of the plaintiff in order to assist in the determination as to whether the statute of limitations was tolled.
>
> [Emphasis supplied.]

The plaintiffs will contend on remand that because of J.C.'s position of trust and authority and their particular vulnerability and psychological distress the normal two-year statute of limitations should be tolled, despite the lapse of about a dozen years or more since the actionable events, *i.e.,* "because of plaintiff's mental state, duress by the defendant, or other equitable grounds." *N.J.S.A.* 2A:61B–1(c).

▉ Resolution of this issue in our practice invariably calls for a factual hearing and decision, usually in advance of trial, before a judge, not a jury. *See Lopez v. Swyer,* 62 *N.J.* 267, 274–76, 300

A.2d 563 (1973); Pressler, *Current N.J. Court Rules, R.* 4:5–4, Comment 33. But the peculiar language of section (c) in *N.J.S.A.* 2A:61B–1 casts doubt upon whether the customary *Lopez* procedure applies to cases brought under this statute which requires that "such a finding [of tolling] shall be made after a plenary hearing, conducted in the presence of the jury." This precise question has not been briefed or argued before us and we hesitate to advance an authoritative opinion on the point, especially since there may be constitutional implications concerning a legislative attempt at allocation of functions between judge and jury in civil damage actions. *N.J. Const.,* art. VI, § 2, par. 3; *see George Siegler Co. v. Norton,* 8 *N.J.* 374, 382–83, 86 A.2d 8 (1952) (statute could not mandate submission of issue of contributory negligence to the jury). The statute before us clearly contemplates a resolution of the tolling issue only after a jury is impaneled and listens to the evidence on the issue. The statute unfortunately does not specify whether the actual decision on tolling is made by the judge or the jury. There is no particularly enlightening legislative history on this point.

*N.J.S.A.* 2A:61B–1 seems clearly to contemplate a right to a jury trial, if demanded. The statute makes several references to a jury, in addition to subsection (c) quoted above. *See N.J.S.A.* 2A:61B–1(d)(1) (evidence of victim's previous sexual conduct not usually available to jury); *N.J.S.A.* 2A:61B–1(e)(1) (use of closed-circuit TV for testimony of victim out of jury's presence). However, the statute does not specifically confer the right to a trial by jury for this statutory cause of action, as the Law Against Discrimination does. *N.J.S.A.* 10:5–13; *L.*1990, *c.* 12, § 2; *see Shaner v. Horizon Bancorp.,* 116 *N.J.* 433, 561 A.2d 1130 (1989). The Judiciary Committee Statement (Senate No. 257, *L.*1992, *c.* 109), accompanying *N.J.S.A.* 2A:61B–1 is not helpful. It simply states, with reference to the supposedly "clarifying amendments" relating to subsection (c):

> In addition, the amendments clarify that a plenary hearing shall be held in the presence of the jury when the issue of "tolling" of the statute of limitations is raised in a case alleging sexual abuse.

We must suggest that more clarification is needed from the Legislature. In the meantime, in the absence of any clear evidence of legislative intent that the jury, not the judge, decide the tolling issue, trial courts should follow the time-proven technique of *Lopez v. Swyer, supra,* and retain their decision-making power on the tolling issue, including conducting a hearing before the jury is impaneled, especially if practical and agreeable to the parties. *See Oswin v. Shaw,* 129 *N.J.* 290, 310, 609 *A.*2d 415 (1992) (doubt about the meaning of statutes resolved in favor of effect which makes the least rather than the most change in the common law); *accord Dattoli v. Yanelli,* 911 *F.Supp.* 143 (D.N.J.1995).

Obviously, as we previously observed in *A.B.C. v. XYZ Corp., supra,* 282 *N.J.Super.* at 504, 660 *A.*2d 1199, cases cannot realistically proceed to verdict anonymously in a jury trial context.

> [I]n order to question potential jurors on *voir dire* about their knowledge of any of the parties . . . the names of the parties would have to be disclosed in open court to the jurors. Even if the jury selection process was somehow conducted in secret, it is unlikely that a juror could be precluded from disclosing the names of the parties.
> [*A.B.C., supra,* 282 *N.J.Super.* at 504, 660 *A.*2d 1199.]

We are satisfied that the judge was justified and did not abuse his discretion by declining defendants' application to allow this lawsuit to proceed anonymously, whether or not we are correct in our ruling that the judge retains decision-making authority on the tolling issue. We stay this ruling for the time period during which appellants may apply to the Supreme Court for further review.

Affirmed.

KLEINER, J.A.D., dissenting.

In their majority opinion, my colleagues have concluded that Judge Hamlin correctly vacated the order entered by Judge Nicola on April 17, 1995. By Judge Hamlin's order, plaintiffs will be permitted to proceed on their separate complaints filed in a format which violates the specific statutory prohibition set forth in *N.J.S.A.* 2A:61B–1(f)(1). I must respectfully dissent.

I would reverse the decision of Judge Hamlin and would reinstate the order entered by Judge Nicola until such time as

defendant J.C. has had a reasonable opportunity to file a motion to dismiss plaintiffs' complaints. Defendant seeks only to maintain confidentiality until such time as his motion to dismiss is determined. Should defendant not prevail on his intended motion to dismiss, then plaintiffs shall be permitted to file an amended complaint omitting initials or fictitious names and substituting the correct names of all litigants. In my opinion, however, the filing of an amended complaint using the true names of the parties would contravene the statute.

## I

After each plaintiff separately filed a complaint utilizing proper names of all litigants, defendant sought a protective order. Defendant specifically requested the entry of an order: "(1) dismissing the complaint or, in the alternative, sealing the complaint; (2) prohibiting any further pleadings and/or documents from being filed with any names, addresses or identities of the parties disclosed therein; and (3) imposing sanctions against plaintiff's counsel."

Defendant did not seek an order compelling that the trial be conducted *in camera* or that the record be sealed. Defendant only requested that his name be protected from public dissemination, and then only until defendant was afforded the opportunity of arguing a motion to dismiss the complaint based upon the traditional two-year statute of limitations. *N.J.S.A.* 2A:14-2.

The request to "seal the complaint" was necessitated by plaintiffs having filed separate complaints in a form contrary to the statutory prohibition delineated in *N.J.S.A.* 2A:61B-1(f)(1), which provides:

(1) The name, address, and identity of a victim *or a defendant shall not appear on the complaint or any other public record* as defined in P.L.1963, c, 73 (C. 47:1A-1 et seq.). In their place initials or a fictitious name shall appear. (emphasis added).

The relief sought by defendant was consistent with the quoted statute. Defendant acknowledged that if plaintiffs' complaints were dismissed for violating *N.J.S.A.* 2A:61B-1(f)(1), each plaintiff

would be permitted to file a new or amended complaint utilizing initials or fictitious names for the litigants.

Plaintiffs' desire to disclose defendant's identity may be driven by a questionable motive. In support of plaintiffs' motions for reconsideration, plaintiffs' counsel argued:

> Finally, and most importantly, there is absolutely no incentive whatsoever for these defendants to attempt to resolve this litigation prior to trial if these proceedings are held in secret. . . .
>
> Since that time [April 17, 1995], I have heard nothing from either counsel regarding settlement. It is obvious that if the matter were public, the defendants would proceed rapidly in their attempts to resolve this matter. Very candidly, the plaintiffs would prefer this matter be resolved. However, there is no incentive whatsoever for anyone to have settlement discussions if, in fact, these proceedings continue behind closed doors.

Evidently, plaintiffs' motions for reconsideration were not predicated upon the lofty purpose of preserving public access to documents and materials filed with the court, but for the venal purpose of extracting a financial settlement related to allegations of sexual molestation occurring between 1979 and 1982, without any proffered evidence that the facts giving rise to those allegations of sexual molestation were psychologically repressed by either plaintiff. The court should not countenance plaintiffs' improper motives and should not provide a mechanism designed to extract financial gain when to do so contravenes the clear statutory mandate designed to insure confidentiality, *N.J.S.A.* 2A:61B–1(f)(1).

## II

In reaching their conclusion that defendant's request was initially improvidently granted by Judge Nicola, the majority finds a statutory ambiguity in *N.J.S.A.* 2A:61B–1(f).

I agree with the majority that their interpretation of *N.J.S.A.* 2A:61B–1(f)(3), as they read it, may conflict with *N.J.S.A.* 2A:61B–1(f)(1), (2), and (4). However, I suggest that a careful analysis of *N.J.S.A.* 2A:61B–1(f) will demonstrate that the statute neither is ambiguous nor contains conflicting subsections.

*N.J.S.A.* 2A:61B–1(f) L.1992, c. 109, § 1, provides:

(1) The name, address, and identity of a victim or a defendant shall not appear on the complaint or any other public record as defined in P.L.1963, c, 73 (C. 47:1A–1 et seq.). In their place initials or a fictitious name shall appear.

(2) Any report, statement, photograph, court document, complaint or any other public record which states the name, address and identity of a victim shall be confidential and unavailable to the public.

(3) The information described in this subsection shall remain confidential and unavailable to the public unless the victim consents to the disclosure or if the court after a hearing, determines that good cause exists for the disclosure. The hearing shall be held after notice has been made to the victim and to the defendant and the defendant's counsel.

(4) Nothing contained herein shall prohibit the court from imposing further restrictions with regard to the disclosure of the name, address, and identity of the victim when it deems it necessary to prevent trauma or stigma to the victim.

Both subsection (1) and subsection (2) provide confidentiality. Subsection (1) prohibits the use of the names and addresses of the victim and the defendant in any legal pleading. Under subsection (2), "any report, statement, photograph, court document, complaint or any other public record" is deemed confidential if it reveals the identity of the alleged victim. The references to "complaint" in subsections (1) and (2) are consistent and instruct that a complaint is to be confidential in all cases involving sexual abuse.

Subsection (3) gives a victim the right to disclose information. The right to disclose information, however, does not negate the confidentiality afforded by subsection (1), which provides that the name of the victim and the defendant shall not appear on the complaint or other public record. Subsection (3) also provides that a third person will have the right to petition the court for disclosure of information, provided good cause exists, and provided both the victim and defendant are given notice of that application. The conclusion seems abundantly clear that the purpose of notice to both the victim and defendant is to protect the confidentiality accorded both victim and defendant by subsection (1), and the additional confidentiality accorded the victim in subsection (2). A third party will not require a hearing if a victim releases information pursuant to the first sentence of subsection (3).

However, a third party who has received information from a victim will still be required to apply to the court for a release of a defendant's name, because that name is still protected under the fictitious-filing mechanism mandated in subsection (1) and could not be released by a victim. A court has the authority to disclose all information to a third party upon a showing of good cause. The third party, though, may not disclose the information to the public at large. A victim may consent to disclose his or her own identity but may not make public either a confidential complaint or the identity of a defendant. This interpretation will "make the most consistent whole of the statute" and gives meaning to the statute as enacted. *State v. A.N.J.*, 98 *N.J.* 421, 424, 487 *A.*2d 324 (1985). To hold as the majority does is to permit plaintiffs to use as a sword that which was intended as a shield.

## III

The majority correctly notes that *R.* 1:4–1(a)(1) provides that generally, every paper filed in an action should identify all the parties. The majority also relies on *R.* 1:2–1. A full reading of that rule states:

All trials, hearings of motions and other applications ... shall be conducted in open court *unless otherwise provided by rule or statute.* If a proceeding is to be conducted in open court, *no record or any portion thereof shall be sealed by order of the court except for good cause shown, which shall be set forth on the record....* (emphasis added).

The majority fails to accord appropriate respect for our Legislature's conclusion that in creating a new cause of action, *N.J.S.A.* 2A:61B–1, it has determined that only initials or a fictitious name of each litigant shall appear in legal pleadings.

The majority also relies upon *Hammock by Hammock v. Hoffmann–LaRoche, Inc.*, 142 *N.J.* 356, 662 *A.*2d 546 (1995), in which the Supreme Court "establish[ed] a standard for deciding when the public should have access to judicial records in the form of documents, transcripts and legal memorandum with attachments filed with a trial court in support of, or in opposition to, motions in civil litigation." *Id.* at 361, 662 *A.*2d 546. *Hammock* does not

provide the answer to the argument posed by this litigation since *Hammock* did not involve the interpretation of a statute designed to protect litigants.

The majority has relied on language in *Hammock* that speaks of the favored status of public access to court documents.

> There is a presumption of public access to documents and materials filed with a court in connection with civil litigation. That right exists under the common law as to the litigants and the public ... But the right of access *is not absolute.* Under both the common law and the First Amendment, a court may craft a protective order. "[T]he strong common law presumption of access must be balanced against the factors militating against access. The burden is on the person who seeks to overcome the presumption of access to show that the interest in secrecy outweighs the presumption." (emphasis added).
>
> [*Id.* 142 *N.J.* at 375, 662 *A.*2d 546].

However, the majority has failed to recognize that the Legislature has already undertaken the balancing test spoken of in *A.B.C. v. XYZ Corp.,* 282 *N.J.Super.* 494, 501, 660 *A.*2d 1199 (App.Div. 1995). Having balanced the appropriate interests, the Legislature made the value judgment that the identities of parties to sexual abuse litigation should remain suppressed. This judgment is evident from the language of *N.J.S.A.* 2A:61B–1(f)(1): "The name, address, and identity of a victim *or a defendant* shall *not* appear on the complaint or in any other public record.... In their place initials or a fictitious name *shall appear.*" (emphasis added).

Obviously, the Legislature, in creating a new cause of action designed to compensate victims of sexual assault, has also recognized that both parties, the victim and the alleged tortfeasor, require some protection from the disclosure of identity in permanent public records filed with the judicial system. That legislative pronouncement must be enforced. Unlike *Hammock,* the legislative mandate eliminates the need of plaintiff "to overcome the presumption of access to show that the interest in secrecy outweighs the presumption." (emphasis added).

## IV

In dicta, my colleagues have concluded, and I agree, that pending further legislative clarification, "trial courts should follow the time-proven technique of *Lopez v. Swyer,* [62 *N.J.* 267, 300

*A*.2d 563 (1983) ] and retain their decision-making power on the tolling issue, including conducting a hearing *before* the jury is impaneled. . . ." (emphasis added).

Having concluded that the statute of limitations issue will be decided by the court, there does not seem to be any reason to deny defendant's requested relief that his name and address remain confidential until the statute of limitations issue is resolved. To prevent any untoward delay, the trial court should, by case management order, delineate a scheduling order for the *Lopez* hearing.

For the reasons expressed, I respectfully dissent.