897 A.2d 362 (2006)
385 N.J. Super. 307
Lawrence LEDERMAN, Plaintiff-Respondent, and
Philip Shapiro, Plaintiff/Intervenor-Respondent,
v.
PRUDENTIAL LIFE INSURANCE COMPANY OF AMERICA, INC., n/k/a/ Prudential Financial, Inc., Lenard Leeds, Steven A. Morelli, Jeffrey K. Brown, Deirdre J. Kamber, John Wirenius, Leeds & Morelli, L.L.P., Leeds, Morelli & Brown, P.C., James Vagnini, Bryan Mazzola, David Nevins, Lisa Calvacca, Susan Fitzgerald, Steve Friedman, Robert John Valli, Jr., Fredric David Ostrove, and Mark E. Faber, Defendants-Respondents, and
Diane Bradley and Brian D. Tusa, Defendants.
American Broadcasting Companies, Inc., North Jersey Media Group, Inc., *363 and Bloomberg News L.P., Intervenors-Appellants.[1]
Superior Court of New Jersey, Appellate Division.
Argued April 5, 2006.
Decided May 9, 2006.
*364 Bruce S. Rosen, Chatham, argued the appeal for intervenors-appellants American Broadcasting Companies, Inc., North Jersey Media Group, Inc., and Bloomberg News L.P. (McCusker, Anselmi, Rosen, Carvelli & Walsh, attorneys; Henry S. Hoberman, Jennifer Borg, and Charles Glasser, of counsel; Mr. Rosen and Edward A. Sturchio, on the brief).
Christopher J. Carey, Morristown, argued the cause for respondent Deirdre J. Kamber (Graham, Curtin & Sheridan, attorneys; Mr. Carey, on the brief).
Gregory B. Reilly, Roseland, argued the cause for respondents Prudential Insurance Company of America and Mark E. Faber (Paul, Weiss, Rifkind, Wharton & Garrison, and Lowenstein Sandler, attorneys; Mr. Reilly and Theodore V. Wells, Jr., on the brief).
Evan H. Krinick of the New York bar, New York City, admitted pro hac vice, argued the cause for respondents Leeds, Morelli & Brown, P.C., Lenard Leeds, Steven A. Morelli, Jeffrey K. Brown and John Wirenius (Rivkin Radler, attorneys; Mr. Krinick, Janice J. DiGennaro of the New York bar, admitted pro hac vice, Harris J. Zakarin, and Andrew S. Turkish, on the brief).
Angela M. Roper, Totowa, argued the cause for respondents Lawrence Lederman and Philip Shapiro (Roper & Twardowsky, William J. Skepnek (Skepnek Law Firm) of the Kansas bar, admitted pro hac vice, and Steven M. Smoot (Smoot Law Firm) of the Texas bar, admitted pro hac *365 vice, attorneys; Kenneth S. Thyne, on the brief).
Marshall D. Bilder, Trenton, argued the cause for respondents Lisa Calvacca, Susan Fitzgerald, Steven Friedman, Bryan Mazzola, David Nevins, Fredric David Ostrove, James Vagnini and Robert John Valli, Jr. (Sterns & Weinroth, attorneys; Mr. Bilder, on the brief).
Before Judges WEISSBARD, WINKELSTEIN and SAPP-PETERSON.
The opinion of the court was delivered by
WINKELSTEIN, J.A.D.
Intervenors American Broadcasting Companies, Inc., North Jersey Media Group, Inc., and Bloomberg News L.P. (the media) challenge the Law Division's August 7, 2003 order that sealed virtually all pleadings and documents filed with the court and barred the public from access to the court proceedings based upon confidentiality agreements among private parties.[2] We conclude that the parties' contractual agreements do not outweigh the presumption of openness that applies to court proceedings and filed documents. Accordingly, we reverse and vacate the sealing orders.
Plaintiff Lawrence Lederman was employed by Prudential Life Insurance Company (Prudential) as a sales agent and manager from 1966 through 1997, when he left his employ as a result of a mental breakdown he claims was caused by actions of Prudential. He alleges Prudential pressured him not to sell insurance to minorities, and discriminated against him and other agents who did.
Subsequently, plaintiff and 358 other current and former Prudential employees who claimed they had similarly been discriminated against by Prudential attended a series of meetings at the New York law firm of Leeds, Morelli & Brown, P.C. (LMB). LMB routinely represents aggrieved parties in their employment-related claims. Lederman and the other attendees (the Covered Claimants) first entered into retainer agreements with LMB. Those agreements provided that LMB would receive a one-third contingent fee to represent each party against Prudential. The Covered Claimants then entered into a May 5, 1999 agreement (the May 1999 Agreement or the Agreement) with both Prudential and LMB. Under the terms of that agreement, the Covered Claimants agreed to engage in a confidential alternative dispute resolution (ADR) process, known as "Roads to Resolution" (R to R), to resolve their employment-related claims against Prudential. Prudential would pay the Covered Claimants' counsel fees to LMB. The Agreement did not specify the dollar amount of counsel fees LMB would receive from Prudential.
The Agreement contained arbitration and confidentiality provisions. Disputes as to the terms or application of the Agreement would be resolved by AAA arbitration and no party or arbitrator could disclose the "existence, content or results" of any arbitration without Prudential's prior written consent. Any court action to enforce the Agreement's terms was required to be filed under seal. The Agreement was to constitute "the entire agreement and final understanding" between the parties.[3]
*366 Lederman claims that unknown to him, on the same date he and the other Covered Claimants entered into the May 1999 Agreement, Prudential and LMB entered into a separate agreement (the Second May 1999 Agreement). According to plaintiff's complaint, Prudential would pay $15,000,000 to resolve the employees' disputes. The first $5,000,000 would be paid as counsel fees directly to LMB in advance of the resolution of any claims; the remaining $10,000,000 would be distributed among the Covered Claimants through the R to R process. Prudential would make an initial advance of $3,500,000, and a subsequent advance of $500,000, which LMB and Prudential "reasonably anticipate[d]" would be earned by LMB under the terms of the agreement. LMB was not required to return either advance. Plaintiff later participated in the R to R process, and an adjudicator awarded him $500,000 for his employment claims.
In this lawsuit, Lederman claims the $4,000,000 advance to LMB was a commercial bribe; LMB and Prudential conspired to defraud and deceive him and the other signatories to the May 1999 Agreement; and Prudential conspired with LMB to deprive plaintiff of LMB's zealous representation in his employment claims against Prudential.[4] Soon after Lederman filed his complaint, which was not filed under seal, news stories about the allegations in the complaint and the May 1999 Agreement, which was attached to the complaint as an exhibit, appeared on the internet and in The Record and the New Jersey Law Journal. WABC-TV aired a report on its Eyewitness News program, and displayed a copy of portions of the Agreement.
Because plaintiff did not file the complaint under seal pursuant to the confidentiality provisions of the May 1999 Agreement and its amendments, on defendants' application the trial court entered a preliminary restraining order sealing the pleadings and documents filed with the court and barring public access to the court proceedings. The order also precluded Lederman, his counsel, and other parties from violating the confidentiality provisions contained in the Agreement.
After Philip Shapiro, another Covered Claimant, moved to intervene and lift the seal, Prudential, LMB and the LMB attorneys cross-moved to maintain the seal. Following a sealed hearing on July 14, 2003, a different Law Division judge granted Shapiro's motion to intervene but imposed a protective order pursuant to Rule 4:10-3. The judge sealed the entire record, "including all documents, transcripts, motions and pleadings." He restrained all parties and their counsel or anyone acting on their behalf from filing future complaints that disclosed the terms of the agreements to any nonparty, attaching the agreements to any complaints unless filed under seal, and discussing the terms of the agreements with anyone, except experts hired by plaintiff's law firm.
The judge found that the parties' agreements to keep the complaint and related documents confidential outweighed the presumption of openness to court proceedings. He reasoned that the agreements were private, the confidentiality provisions were clear on their face, and were bargained for by the parties. The judge found that New Jersey's public policy favored alternative dispute resolution processes, including provisions that required confidentiality.
The court observed that sealing the record would not damage plaintiff, but LMB *367 would suffer serious damage to its reputation if the "rather serious and damaging" allegations against it as were set forth in the complaint were made public. He also found that the other signatories to the agreements, who are not parties here, would be irreparably harmed by disclosure; and disclosure would deprive Prudential of the ability to enforce confidentiality agreements.
Next, the judge concluded that the public had no interest in the lawsuit. Although he recognized that fraud, as plaintiff had alleged in his complaint, is generally open to public scrutiny, he did not characterize this case "as a garden variety consumer fraud action wherein the public health safety and welfare ... are directly implicated...." He said that the fraud here "does not go beyond the private [parameters] of the parties to the agreement...."
Following the court's decision, the media moved to intervene and unseal the record. On August 6, 2003, following a hearing on the media's application, the Law Division judge granted the media the right to intervene, but declined to lift the seal for essentially the same reasons he expressed when he continued the seal on July 14, 2003, before the media intervened. He also rejected the media's "cat-out-of-the-bag" argument  that the complaint and May 1999 Agreement were no longer confidential because the public had access to those documents when Lederman filed his complaint, prior to the first sealing order being issued.
The judge then sealed the August 6, 2003 proceeding, except as to the parties. He granted the media access to that portion of the July 14, 2003 transcript that contained his prior decision to seal the record, and to the written order that memorialized his decision, but the judge refused to provide the media with access to the portion of the hearing transcript that preceded his decision.[5]
The public has a common-law right of access to judicial proceedings and a right to inspect judicial records. Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1066 (3d Cir.1984); Hammock v. Hoffmann-LaRoche, Inc., 142 N.J. 356, 371, 662 A.2d 546 (1995). This right applies to civil as well as criminal proceedings. N.J. Div. of Youth & Fam. Servs. v. J.B., 120 N.J. 112, 122, 576 A.2d 261 (1990); Zukerman v. Piper Pools, Inc., 256 N.J.Super. 622, 626, 607 A.2d 1027 (App.Div.), certif. denied, 130 N.J. 394, 614 A.2d 617 (1992).
The First Amendment of the United States Constitution also guarantees the public and the press their right of access to both civil and criminal trials. Publicker Indus., supra, 733 F.2d at 1070; Hammock, supra, 142 N.J. at 370, 662 A.2d 546; see also Leucadia, Inc. v. Applied Extrusion Techs., Inc., 998 F.2d 157, 164 (3d Cir.1993) (public has presumptive right of access to nondiscovery pretrial motions and material filed in connection with those motions); Bank of Am. Nat'l Trust & Savs. Ass'n v. Hotel Rittenhouse Assocs., 800 F.2d 339, 343 (3d Cir.1986) (press and public have access to civil proceedings and transcript based upon First Amendment as well as common law). The right of access is not, however, absolute. Bank of Am., supra, 800 F.2d at 344; Publicker Indus., supra, ibid.; Hammock, supra, 142 N.J. at 375-76, 662 A.2d 546; *368 Zukerman, supra, 256 N.J.Super. at 626, 607 A.2d 1027.
In this state, all proceedings shall be conducted in open court, and no record may be sealed except for good cause. R. 1:2-1. What constitutes good cause is governed by a standard of reasonableness. Hammock, supra, 142 N.J. at 376, 662 A.2d 546. The Hammock Court explained the standard to determine when a court record or proceeding may be sealed.
There is a presumption of public access to documents and materials filed with a court in connection with civil litigation. That right exists under the common law as to the litigants and the public.... [T]he right of access is not absolute. Under both the common law and the First Amendment, a court may craft a protective order. [T]he strong common law presumption of access must be balanced against the factors militating against access. The burden is on the person who seeks to overcome the presumption of access to show that the interest in secrecy outweighs the presumption. Documents containing trade secrets, confidential business information and privileged information may be protected from disclosure.
[Id. at 375-76, 662 A.2d 546 (internal quotation omitted).]
The presumption of public access applies to all nondiscovery pretrial motions, and attaches to all "materials, documents, legal memoranda and other papers `filed' with the court that are relevant to any material issue involved in the underlying litigation (not simply relevant to a particular motion) regardless of whether the trial court relied on them in reaching its decision on the merits." Id. at 381, 662 A.2d 546. The presumption applies regardless of the disposition of the motion. Ibid.
To determine whether to seal the record, the court must conduct a "flexible balancing process ... to determine whether the need for secrecy substantially outweighs the presumption of access." Ibid. The burden of proof rests with the person who seeks to overcome the "strong presumption of access" to establish "by a preponderance of the evidence that the interest in secrecy outweighs the presumption." Ibid. That need for secrecy "must be demonstrated with specificity as to each document. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, are insufficient." Id. at 381-82, 662 A.2d 546. The evidence must demonstrate "why public access to the documents should be denied currently rather than rely on the fact that a protective order was entered earlier." Id. at 382, 662 A.2d 546.
Whether to seal or unseal documents is addressed to the discretion of the trial court. Id. at 380, 662 A.2d 546. In exercising that discretion, the court must be guided by the good cause standard. Id. at 380-83, 662 A.2d 546. The standard "recognizes a very strong presumption in favor of public access." Id. at 386, 662 A.2d 546. Applying this test here, we conclude that defendants have not overcome the very strong presumption in favor of public access to either the court proceedings or the filed documents.
Defendant's primary argument is that the parties contracted for confidentiality in the May 1999 Agreement and its amendments and they have an overriding interest in those contractual rights that outweighs the presumption in favor of public access. We agree that defendants' have an interest in the contractual obligations evidenced by the May 1999 Agreement and its amendments; see Publicker, supra, 733 F.2d at 1074; Universal City Studios, Inc. v. Superior Court of Los Angeles County, 110 Cal.App.4th 1273, 2 Cal.Rptr.3d 484, 491 (2003); nevertheless, that interest in their *369 contractual rights is not sufficient, without a specific showing of serious injury, to overcome the presumption in favor of public access to the court proceedings. Id. at 492.
Defendants rely, in part, on the circuit court's opinion in Publicker, supra. That case concerned a corporate dispute over shares of a publicly-held corporation. 733 F.2d at 1061-62. The media sought review of a district court's decision to close the hearing and seal the transcript. Id. at 1061. Discussing when an individual's overriding interest may overcome the presumption of openness to the courts, the court explained:
The overriding interest can involve the content of the information at issue, the relationship of the parties, or the nature of the controversy. For example, an interest in safeguarding a trade secret may overcome a presumption of openness. The content of the information is critical in that context. However, in the situation where a plaintiff seeks an injunction to prevent his former lawyer from disclosing certain information arguably within the attorney-client privilege, it is the relationship between the parties not the content of the information which might overcome the presumption of openness. A similar situation would be presented where there is a binding contractual obligation not to disclose certain information which to the court seems innocuous but newsworthy; in that situation unbridled disclosure of the nature of the controversy would deprive the litigant of his right to enforce a legal obligation.

[Id. at 1073-74 (internal citations omitted) (emphasis added).]
Defendants claim this highlighted language supports their position. They assert they have a binding contractual obligation and disclosure of the nature of the controversy would deprive them of their right to enforce that obligation. That may be so. But, more is necessary to seal court records. Mere deprivation of the right to enforce a contractual obligation is not, without an additional showing of serious harm, sufficient to override the public's right of access to the courts. See id. at 1071 ("Good cause is established [to overcome the presumption of openness] on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure."); see also, inter alia, Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir.1994) (good cause must be demonstrated to justify entry of order of confidentiality); Miller v. Indiana Hosp., 16 F.3d 549, 551 (3d Cir.1994) (party seeking to seal bears "heavy burden"); Charlie H. v. Whitman, 213 F.R.D. 240, 248, 251 (D.N.J.2003) (modifying overly broad confidentiality order to allow public access to certain records); Universal City Studios, supra, 2 Cal.Rptr.3d at 492 (no sealing of court documents "merely upon the agreement of the parties without a specific showing of serious injury").
For example, in Universal City Studios, supra, the trial court denied the defendant's motion to seal certain documents; the defendant's justification for sealing the documents was the plaintiff's contractual obligation to keep the documents confidential. 2 Cal.Rptr.3d at 488. On appeal, the defendant relied on Publicker for the proposition that sealing is warranted to enforce a binding contractual obligation not to disclose information. Id. at 491-92. The California appellate court rejected that position. The court said:
[A] thorough reading of all of the Publicker opinion makes it clear that the Third Circuit requires more than a mere agreement of the parties to seal documents filed in a public courtroom.... [T]o close a civil proceeding there must *370 be evidence of "serious injury"; and the serious injury must be shown with specificity. Other courts applying Publicker have emphasized that closure or sealing can only occur under the Third Circuit rule when there has been a specific showing of serious injury.
[Id. at 492 (citations omitted).]
The court concluded that no appellate court decision had construed Publicker to permit sealing of court documents "merely upon the agreement of the parties without a specific showing of serious injury." Ibid. And neither do we.
Here, while defendants have identified their overriding interest affected  their right to contract  they have failed to satisfy the second element necessary to seal court records, the showing of a specific, serious injury that would result from lifting the seal. No trade secrets, financial or product information are protected in the May 1999 Agreement, its amendments or the records filed with the court. Nor would there be a serious injury to the parties' relationship that would result from opening the proceedings to the public; disclosure would not result in a breach of attorney-client privilege, or any other privilege  Lederman, the client, has joined in the media's application to open the proceedings. Defendants' "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, are insufficient" to warrant closing the proceedings to the public. Hammock, supra, 142 N.J. at 381-82, 662 A.2d 546.
The trial judge relied, in part, on what he perceived would be embarrassment, that is, harm to the parties' reputations, should the documents become public. We agree that plaintiff's allegations may embarrass defendants. In his complaint, Lederman alleged Prudential conducted discriminatory business practices; and, he asserted claims of bribery and fraud with regard to Prudential's agreement to pay LMB $5,000,000 in counsel fees, $4,000,000 of which appears to be nonrefundable. Nevertheless, harm to the parties' reputations does not, in a case such as this, justify sealing the record. See R.M. v. Supreme Court of New Jersey, 185 N.J. 208, 216, 227, 883 A.2d 369 (2005) (finding Rule 1:20-9, which mandated disciplinary grievance action against attorneys remain confidential until formal complaint filed, unconstitutional; and concluding that preventing reputational injuries to attorneys was not sufficient reason "for repressing speech that would otherwise be free") (quoting Landmark Commc'ns, Inc. v. Virginia, 435 U.S. 829, 841-42, 98 S.Ct. 1535, 1543, 56 L.Ed.2d 1, 12 (1978)) (quoting N.Y. Times Co. v. Sullivan, 376 U.S. 254, 272, 84 S.Ct. 710, 722, 11 L.Ed.2d 686, 702 (1964)); but compare Feffer v. Goodkind, 152 Misc.2d 812, 578 N.Y.S.2d 802, 804 (Sup. Ct.1991) ("litigants ought not be required to wash their dirty linen in public and subjected to public revelation of embarrassing material where no substantial public interest is shown"). No more embarrassment would be suffered by the parties here than would a wrongfully accused defendant in a criminal case, or a professional in a malpractice action where the charges were ultimately found to be without merit. If embarrassment were the yardstick, sealing court records would be the rule, not the exception.
Defendants claim, and it appears undisputed, that confidentiality was the cornerstone of the parties' agreement to arbitrate their employment-related disputes. The Law Division reasoned that because public policy favors arbitration of disputes, the parties' confidentiality agreement, which was an essential element of their agreement to arbitrate, should be honored. We are mindful that public policy favors arbitration. See Martindale v. *371 Sandvik, Inc., 173 N.J. 76, 92, 800 A.2d 872 (2002). And confidentiality is an important aspect of the ADR process. State v. Williams, 184 N.J. 432, 446, 877 A.2d 1258 (2005). Nonetheless, though arbitration has the worthy goal of reducing the number of cases filed in court, which in turn provides the litigants with a less expensive and more expeditious forum to resolve their claims, open access to our courts is the bedrock of public confidence in our judicial system. Public policy favoring arbitration cannot sanction what here essentially became secret proceedings. Cf. Bank of Am., supra, 800 F.2d at 345 (encouraging settlements not sufficient to "countenance what are essentially secret judicial proceedings. We cannot permit the expediency of the moment to overturn centuries of tradition of open access to court documents and orders.").
Another factor that weighs in favor of lifting the seal is that plaintiff's complaint, to which the May 1999 Agreement was attached, became public when it was filed with the court before the first sealing order was issued. Both the print and television media disseminated the information. It was disclosed on the internet. In other words, even though plaintiff violated his confidentiality agreement with defendants when he did not file the complaint under seal, at that point the information became public, and no current justification for privacy remains.
The complaint recited in detail plaintiff's allegations of misconduct against both Prudential and LMB. The news media disseminated those allegations to the public. As we have said in the past, "[t]he public should not be excluded from information already widely disseminated." T.S.R. v. J.C., 288 N.J.Super. 48, 59, 671 A.2d 1068 (App.Div.1996); see also Gambale v. Deutsche Bank A.G., 377 F.3d 133, 144 (2d Cir.2004) (while it was an abuse of discretion for district court to refer to confidential information, because the information became highly accessible and disseminated, court did "not have the power, even [if] of the mind to use it if [it] had, to make what has thus become public private again.... The genie is out of the bottle, albeit because of what we consider to be the district court's error. We have not the means to put the genie back.") (footnote omitted); Cf. State v. Clark, 381 N.J.Super. 41, 45, 884 A.2d 808 (App.Div.2005) (reasons for confidentiality no longer extant when allegations against former municipal court judge became public upon return of indictment). While we do not consider the prior dissemination of the information as the sole reason to lift the seal, it is a consideration in our decision.
Also weighing against confidentiality is the public interest inherent in plaintiff's allegations. A profound public interest is implicated when matters of "health, safety and consumer fraud are involved." Hammock, supra, 142 N.J. at 379, 662 A.2d 546; see also Pansy, supra, 23 F.3d at 787-88. "[T]here must be careful scrutiny prior to sealing records and documents filed with a court in a high public-interest case." Hammock, supra, ibid. This is such a case.
We disagree with the trial judge who found no public interest in the parties' dispute. The judge focused solely upon the arbitration clause, which was the basis of defendants' motion to dismiss plaintiff's complaint; the judge concluded that whether the parties were required to arbitrate was not of public interest. In so doing, the court took too narrow a view of what should be considered to decide if the public has an interest in a dispute. The presumption of public access "attaches to all materials ... that are relevant to any material issue involved in the underlying litigation...." Id. at 381, 662 A.2d 546. *372 Here, the underlying litigation involves issues of heightened public interest: allegations of racial discrimination against Prudential and fraud and bribery claims against both Prudential and LMB. These issues warranted "careful scrutiny" and more circumspection, which the court did not apply when it determined to seal the records. See id. at 379, 662 A.2d 546; see also Turf Lawnmower Repair, Inc. v. Bergen Record Corp., 139 N.J. 392, 413, 655 A.2d 417 (1995) (public has "legitimate interest in any business charged with criminal fraud, a substantial regulatory violation, or consumer fraud that raises a matter of legitimate public concern"), cert. denied, 516 U.S. 1066, 116 S.Ct. 752, 133 L.Ed.2d 700 (1996).[6]
The presumption of openness to court proceedings requires more than a passing nod. Open access is the lens through which the public views our government institutions. It is essential to foster public confidence in the judiciary. See N.J. Div. of Youth & Family Servs., supra, 120 N.J. at 122-23, 576 A.2d 261. Access to the courts advances "the first amendment's `core purpose of assuring freedom of communication on matters relating to the functioning of government.'" Ibid. (quoting Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 575, 100 S.Ct. 2814, 2826, 65 L.Ed.2d 973, 988 (1980)). Protective orders that have a chilling effect upon this purpose should be used sparingly, and only after the entity that seeks to overcome the strong presumption of access establishes that the interest in secrecy outweighs the presumption. Here, defendants have not met that burden. They have not demonstrated that they will suffer "a clearly defined and serious injury" if the sealing orders are lifted and the lawsuit and related documents are opened to public scrutiny. See Publicker, supra, 733 F.2d at 1071. Simply put, defendants have not proven the need for secrecy.
Consequently, we vacate the sealing orders. We do so, however, subject to the following limitations, which are necessary to protect the interests of nonparties to this lawsuit. We remand to the Law Division to review each document and redact the following information: the names and identifying information of the approximately 358 Covered Claimants who are not parties to this lawsuit; all correspondence and certifications in connection with the allegations against LMB made to the New York Grievance Committee;[7] the transcripts, pleadings and opinion of the district court in Taylor v. Prudential; and all pleadings filed under seal that are included in the appendix in which neither Lederman nor Shapiro are plaintiffs. Subject to these limitations, all pleadings, transcripts and documents filed with the court in this case and all future court proceedings shall be immediately opened to the media and the public.
Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] We have edited the caption to reflect the correct spellings and status of the parties.
[2] Though the media has appealed only from the August 7, 2003 order, in this opinion we address all sealing orders entered in this case.
[3] The Covered Claimants, Prudential and LMB signed a number of subsequent agreements; each incorporated the basic terms of the May 1999 Agreement, including the arbitration and confidentiality provisions.
[4] Other Covered Claimants have filed similar lawsuits.
[5] In subsequent sealed proceedings, the motion judge dismissed plaintiff's complaint on summary judgment. In a companion opinion also filed today, Lederman v. Prudential Life Ins. Co. of Am., 385 N.J.Super. 324, 897 A.2d 373, 2006 WL 1236095 (App.Div.2006), we reversed and reinstated plaintiff's complaint against several defendants.
[6] Defendants also rely on an unpublished district court decision where the court denied another Covered Claimant's application to unseal the record. Taylor v. Prudential Ins. Co. of Am., Civ. No. 02-2536 (D.N.J. Nov. 26, 2002), aff'd, 91 Fed. App'x. 746 (3d Cir.2003), cert. denied, 543 U.S. 820, 125 S.Ct. 60, 160 L.Ed.2d 29 (2004). The media was not a party to that application and we do not find the decision applicable to the issue presented here.
[7] See N.Y. Comp.Codes R. & Regs. N.Y.2d Dep't Ct. R., § 691.4(j) (2006) ("Unless otherwise provided ... all proceedings conducted by a grievance committee shall be sealed and be deemed private and confidential.").